# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

Jaime Mijangos,

                Petitioner

      vs.

A.P. Kane, Warden CTF,

                Respondent

_____

Arnold Schwarzenegger, Governor, and
Board of Parole Hearings,

          Real Parties in Interest

_____

Case No. _____

## PETITION FOR WRIT OF HABEAS CORPUS

### AND

## MEMORANDUM OF POINTS AND AUTHORITIES

ORIGINAL

Jaime Mijangos,
Petitioner In Pro Per

CDCR No. E-81550
P.O. Box 689, G-322L
Soledad, CA  93960-0689

TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                    iii

PETITION FOR WIRIT OF HABEAS CORPUS
                                                                         1
    Introduction                                                         1
    Statement of the Facts                                               2
    Prayer for Relief                                                   10


MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PETITION FOR WRIT OF HABEAS CORPUS                                    11
    Introduction.                                                        11
    The Offense of August 22, 1986 and the Jury's Findings.             11
    Post Conviction Programming.                                         13

GROUND I

    THE PETITIONER HAS A CONSTITUTIONALLY PROTECTED LIBERTY
    INTEREST IN PAROLE AND DUE PROCESS RIGHTS UNDER THE FIFTH
    AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION, THAT CAN
    NOT BE INFRINGED UPON BY AN UNCONSTITUTIONAL AND
    UNREVIEWABLE STATE COURT STANDARD OF LAW.                            15

    A.    Federally Protected Liberty Interest In Parole.               15

    B.    The In re Dannenberg Decision Unlawfully Obstructs and
          Obscures Proportionality In Sentencing, Thereby
          Violating Petitioner's Due Process and Liberty Interest
          Rights.                                                        16

    C.    Without Any Evidence Demonstrating A Current Threat To
          Society, Petitioner's Liberty Interest Is Violated By
          Serving A Term Of Incarceration Exceeding The Bright-
          Line Rule.                                                     19

    D.    Good Time Credit Earning.                                      20

    E.    California Courts Have Failed to Protect Petitioner's
          Liberty Interest and Due Process Rights, Requiring
          Federal Review and Remedy.                                     20

GROUND II

    THE BOARD DEPRIVED PETITIONER OF HIS LIBERTY INTEREST AND
    DUE PROCESS RIGHTS BY REPEATEDLY DENYING HIM PAROLE BASED ON
    THE UNCHANGING FACTS OF THE COMMITMENT OFFENSE AND IGNORING
    THE EVIDENCE OF HIS REHABILITATION PROGRAMMING AND CONTINUED
    EXEMPLARY BEHAVIOR WHILE INCARCERATED.                               21

A.   Due Process of Law Requires Examination of Petitioner's
     Case to Protect Petitioner from Serving an Aggravated
     Term in Prison Based on Factors Not Found by Trial Jury.    21

B.   State and Federal Due Process of Law Under the Some
     Evidence Test Requires Two Levels of Review.    22

C.   The Board's Findings of Unsuitability Do Not Amount to
     Some Evidence in Violation of Due Process.    26

D.   The Superior Court's Findings Outside the Board's
     Findings of Unsuitability Do Not Amount to Some Evidence
     to Deny Parole..    36

E.   Factors of Suitability Undeniably Demonstrate Actual
     Rehabilitation which Mandates Petitioner's Suitability
     and Release on Parole.    38

F.   The Board's Indifference to "Actual Evidence" that
     Petitioner Is Not a Current or Unreasonable Risk to
     Public Safety Demonstrates a Pro Forma, Sham Parole
     Hearing.    41

G.   Reliance on Unchanging Offense Factors to Deny Parole
     Violates Petitioner's Due Process and Liberty Interest
     Rights, Resulting in a Disproportionate Term of
     Incarceration.    42

H.   The Predictive Value of Petitioner's Offense Holds No
     Weight Of Unsuitability After Petitioner Has Served
     Twenty Exemplary Years In Prison Demonstrating Extensive
     Evidence of Actual Rehabilitation.    45

CONCLUSION    48

**TABLE OF AUTHORITIES**

**State Cases**                                                       Page

Hornung v. Superior Court (2000) 81 Cal.App.4th 1098                   21
In re Liber Andrade (2006) 46 Cal.Rptr.3d 317                         46
In re Barker (2007) 151 Cal.App.4th 346          23, 29, 31, 35, 38, 39, 41
                                                             42, 43, 45
In re Cooper (2007) 153 Cal.App.4th 1043        13, 19, 24, 27, 31, 39, 44
                                                             45, 46
In re Dannenberg (2005) 34 Cal.4th 1061                           passim
In re DeLuna (2005) 126 Cal.App.4th 585                              16
In re Elkins (2006) 144 Cal.App.4th 475       16, 19, 23, 25, 30, 31, 32, 33
                                              35, 37, 38, 40, 41, 44, 45
In re Gray (2007) 151 Cal.App.4th 379         18, 26, 28, 35, 39, 43, 46
In re Hogan (1986) 187 Cal.App.3d 819                                21
In re Janice D. (1979) 28 Cal.3d 210                                 19
In re Lawrence (2007) 150 Cal.App.4th 1511       17, 24, 25, 27, 33, 34, 38
                                              39, 40, 42, 43, 44, 45, 47
In re Wen Lee (2006) 143 Cal.App.4th 1400       19, 23, 24, 29, 30, 31, 32
                                              33, 35, 37, 38, 39, 40, 41
                                                             43, 45
In re Lowe (2005) 130 Cal.App.4th 1405                               16
In re Minnis (1972) 7 Cal.3d 639                                  39, 46
In re Morrall (2002) 102 Cal.App.4th 280                             23
In re Powell (1988) 45 Cal.3d 894                            19, 22, 23
In re Ramirez (2001) 94 Cal.App.4th 549         17, 22, 23, 27, 35, 41, 42
In re Rosenkrantz (2002) 29 Cal.4th 616                          passim
In re ScottI (2004) 119 Cal.App.4th 871         17, 19, 23, 30, 31, 39, 40
                                                             42, 43
In re Scott II (2005) 133 Cal.App.4th 573           19, 23, 25, 35, 39
                                                 40, 41, 42, 43, 45
In re Seabock (1983) 140 Cal.App.3d 29                               46
In re Shaputis (2005) 37 Cal.Rptr.3d 324                          16, 30
In re Shaputis (May 17, 2006) 2007 DJDAR 6008 (depublished)          16
In re Ernest Smith (2003) 114 Cal.App.4th 343       18, 19, 23, 28, 39, 40
                                                             43, 46
In re Mark Smith (2003) 109 Cal.App.4th 489               34, 35, 43
In re Strum (1973) 11 Cal.3d 258                                     39
In re Leslie Van Houten (2004) 116 Cal.App.4th 339                   44
In re Weider (2006) 145 Cal.App.4th 570         17, 24, 28, 29, 30, 32, 33
                                              35, 37, 39, 40, 41, 43
Scheiding v. General Motors (2000) 22 Cal.4th 471                    18


**Federal Cases**

Apprendi v. New Jersey (2000) 530 U.S. 466               21, 22, 28, 30, 48
Biggs v. Terhune (2003) 334 F.3d 910                             passim
Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403
                                                         21, 22, 28, 30, 48

Board of Pardons v. Allen (1987) 428 U.S. 368, 96 L.Ed.2d 303, 107 S.Ct. 2415
                                                                3, 16, 19
Bouie v. Columbia (1964) 378 U.S. 347, 84 S.Ct. 1897, 12 L.Ed.2d 894          17
Brown v. Poole (9th Cir. 2003) 337 F.3d 910                                   22
Cunningham v. California (2007) __ U.S. __, 127 S.Ct. 856
                                                         21, 22, 28, 30, 48
Daniels v. Williams (1986) 474 U.S. 327                                       23
Dent v. West Virginia (1899) 129 U.S. 114                                     23
Grayned v. City of Rockford (1972) 408 U.S. 104                              26
Greenholtz v. Nebraska (1979) 442 U.S. 1, 60 L.Ed.2d 668, 99 S.Ct. 2100
                                                3, 16, 19, 26, 40, 46, 47
Irons v. Carey (9th Cir. 2007) 470 F.3d 658     3, 16, 19, 22, 24, 25, 34
                                               41, 42, 43, 44, 45, 46, 47
Irons v. Warden (E.D. Cal. 2005) 358 F.Supp.2d 936                           45
Little v. Hadden (D.Colo. 1980) 504 F.Supp 558                           24, 48
Lupo v. Norton (1974) 371 F.Supp 156                                         48
Martin v. Marshall (N.D Cal. 2006) 431 F.Supp.2d 1038    25, 29, 33, 35, 40
                                                         42, 43, 44, 45
Martin v. Marshall (N.D. Cal. 2006) 448 F.Supp.2d 1143                       10
McQuillion v. Duncan (9th Cir. 2002) 306 F.3d 895   3, 15, 19, 22, 23, 44, 46
McQuillion v. Duncan (9th Cir. 2002) 342 F.3d 1012                           10
O'Bremski v. Maass (9th Cir. 1990) 915 F.2d 418                              21
Oxborrow v. Eikenberry (9th Cir. 1989) 877 F.2d 1385                        17
Peltier v. Wright (9th Cir. 1994) 15 F.3d 860                               17
Perveler v. Estelle (9th Cir. 1992) 974 F.2d 1132                         3, 16
Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063                16, 19
                                                23, 25, 30, 33, 34, 39
                                                40, 41, 42, 43, 45
Sanchez v. Kane (C.D. Cal. 2006) 444 F.Supp.2d 1049                     25, 37, 38
                                                         41, 43, 45
Sass v. California Board of Prison Terms (9th Cir. 2006) 461 F.3d 1123
                                                                    16, 39
Schware v. Board of Bar Examiners for the State of New Mexico
     (1957) 353 U.S. 323                                                    46
Sellars v. Procunier (9th Cir. 1981) 641 F.2d 1295                          21
Superintendent v. Hill (1985) 472 U.S. 445                        3, 19, 20, 22
                                                         23, 33, 44, 47
United States v. Guagliardo (9th Cir. 2002) 278 F.3d 868                    26
United States v. Walsh (9th Cir. 1985) 770 F.2d 1490                        17
Willis v. Kane (N.D. Cal. 2007) 485 F.Supp.2d 1126        22, 25, 33, 35, 37
                                                         38, 40, 41, 42, 43
                                                                    45, 47
Wolff v. McDonnell (1974) 418 U.S. 539, 94 S.Ct 2963, 41 L.Ed.2d 935
                                                              20, 23, 44


United States Constitution:

5th and 14th Amendments, Due Process of Law                              passim
6th Amendment, Right to Jury Trial                     8, 21, 22, 28, 29, 30


California Constitution:

Article I, Section 15, Due Process of Law                                passim

**United States Codes**:

28 U.S.C. §2254                                                    1, 3, 5, 9, 20


**California Penal Codes**:

section 190                                                        16, 18, 26
section 1168                                                               18
section 1170                                                               18
section 2931                                                           20, 24
section 3000                                                               18
section 3041                                                           passim
section 5011                                                               37


**California Code of Regulations**:

section 2236                                                               37
section 2280                                                               16
section 2400                                                             2326
section 2402                          8, 11, 19, 26, 27, 28, 30, 31
                                         32, 33, 34, 35, 37, 38, 40
section 2403                          7, 10, 13, 16, 17, 19, 20, 22
                                             24, 30, 43, 44, 45, 47
section 2404                                                               29
section 2410                                             7, 20, 44, 47

**PETITION FOR WRIT OF HABEAS CORPUS**

Now comes Petitioner Jaime Mijangos (hereinafter "Petitioner") on petition for writ of habeas corpus in the U.S. District Court for the Northern District of California pursuant to 28 U.S.C. §2254(a) challenging a Board of Parole Hearings (hereinafter "Board") denial of parole on September 13, 2005 in violation of Petitioner's due process and liberty interest rights protected by the Fifth and Fourteenth Amendments to the U.S. Constitution.

As presented herein, Petitioner's denial of parole by the Board, summary denial with opinion by the Los Angeles County Superior Court and complete disinterest by the California Appellate and Supreme Courts represent acts contrary to clearly established federal and U.S. Supreme Court law and an unreasonable determination of the facts in light of the evidence presented. (28 U.S.C. § 2254(d)(1)-(2).)

Petitioner has lawfully exhausted this petition in state court[1] and now requests an evidentiary hearing and relief from the violations of his due process rights in the U.S. District Court.

**Introduction**

Petitioner challenges the denial of parole at his second (2) parole hearing (1st subsequent). Petitioner challenges the legality of his continued confinement for the past 15 years, 4 months on a sentence of 18 years-to-life for second degree murder where the killing was unintentional, based on implied malice. Despite having an exemplary prison conduct record with only 1 non-violent disciplinary rules violation in 1992, extensive support for parole and

---

[1] Petitioner's parole hearing was held on September 13, 2005, with the decision becoming final on January 11, 2006. (Exhibit A, Board of Parole Hearings Transcript of September 13, 2005, p.69:24.) Petitioner filed petition for writ of habeas corpus in the Superior Court of Los Angeles on June 19, 2006, and after significant delays by the court lasting 7 months, the petition was denied on January 30, 2007. (Exhibit I.) Petition for writ of habeas corpus was filed in the Court of Appeal, Second Appellate District, on March 13, 2007 and was summarily denied on March 20, 2007. (Exhibit J.) Petitioner filed petition for writ of habeas corpus in the California Supreme Court on May 14, 2007 and was denied on September 19, 2007. (Exhibit K.)

confined three (3) years past his minimum eligible parole date (MEPD), Petitioner's parole denial is not supported by fact or law.

Paramount to Petitioner's two parole denials, the Board has relied on the commitment offense. Every murder has differing collateral facts. Simply reciting those facts to deny parole does not satisfy due process. It is always possible to describe a murder as repulsive and repugnant. However, a less superficial and more substantive approach to parole determination is required to comport with due process of law.

There was absolutely no evidence at the September 13, 2005 parole hearing that would support a finding of unsuitability based on pre-conviction factors, the commitment offense or post-conviction behavior. To the contrary, all evidence points to the fact that Petitioner is suitable for parole. The Board's decision was arbitrary and capricious, and the state courts' reliance on that decision is in violation of due process of law.

**Statement of the Facts**

1. In 1990, Petitioner was convicted of second degree murder in Los Angeles County Superior Court (Case No. BA019784) for the shooting death of a victim who with numerous others had assaulted, in melee fashion, Petitioner's family members and threatened Petitioner. Petitioner was also convicted of assault with a deadly weapon and great bodily injury against a second victim, with those charges being run concurrent to the murder offense. Petitioner was sentenced to 18 years to life.

2. On October 17, 2001 Petitioner's initial parole suitability hearing was held, and Petitioner was denied parole for a period of three (3) years.

3. Petitioner appeared before the Board on September 13, 2005, for his second parole hearing. He was denied parole for three (3) years. (Exhibit A, pp. 64-69, see p. 64:15-16.). Petitioner's MEPD was June 25, 2002.

I

4.  California Penal Code section 3041 (herein after "P.C. §3041")[2] creates a liberty interest in parole and a presumption that parole will be granted at the initial hearing that is protected by due process under the U.S. Constitution and recognized by state and federal case law.  (Greenholtz v. Nebraska Penal Inmates (1979) 442 U.S. 1, 7, 11-12, 60 L.Ed.2d 668, 99 S.Ct. 2100; Board of Pardons v. Allen (1987) 482 U.S. 368, 381, 96 L.Ed.2d 303, 107 S.Ct. 2415; Perveler v. Estelle (9th Cir. 1992) 974 F.2d 1132; McQuillion v. Duncan (2002) 306 F.3d 895, 902; Biggs v. Terhune (2003) 334 F.3d 910, 913-914; and Irons v. Carey (9th Cir. 2007) 479 F.3d 658, 682.)

5.  Petitioner's federally protected liberty interest can not be infringed upon by a vague and unreviewable "minimum necessary" standard, as set forth by the California Supreme Court, In re Dannenberg (2005) 34 Cal.4th 1061, which contradicts a twenty-five year base of state and federal case law.  The ruling in Dannenberg is contrary to clearly established U.S. Supreme Court law in its use of unconstitutionally vague language.

6.  The some evidence standard of Superintendent v. Hill (1985) 472 U.S. 445, 454-455, 105 S.Ct 2768, 86 L.Ed.2d 356 is clearly established U.S. Supreme Court law in the parole context for the purpose of habeas corpus relief under 28 U.S.C. §2254(d).  However, no evidence demonstrates Petitioner to be a current and unreasonable threat to the public.  With good time credits applied, Petitioner has served an exemplary term of incarceration two (2) years beyond the minimum number of years of his prison sentence and is entitled to parole.  (Irons v. Carey, supra, 479 F.3d pp.664-665.)  Petitioner has a liberty interest in earning good time credits that must be meaningfully applied to reduce his prison term.

---

[2] All penal code ("P.C.") cites herein refer to California Penal Codes.

## II

7.  The Board held Petitioner's second parole suitability hearing on September 13, 2005, the facts of which are herein delineated. Petitioner admits and accepts responsibility for his actions in the offense. (Exhibit A, p.12:11-23.) Petitioner openly and extensively discussed the crime (Exhibit A, pgs.7-19 and 49-59), pre-conviction (Exhibit A, pgs.19-25, 31-33 and 39-40) and post-conviction factors (Exhibit A, pgs.28-31 and 34-49) with the Board.

8.  At the hearing, the Board reviewed Petitioner's laudatory documentation and self-help participation, reading the more recent documentation into the record. (Exhibit A, pp.37-42.) The Board also reviewed Petitioner's work, educational, self-study and vocational advances. (Exhibit A, pp.34-37. See attached Exhibit B for a complete record of laudatory and self-help documentation; Exhibit C for all vocational documentation; Exhibit D for all educational documentation; and Exhibit E for all self-study documentation.)

9.  In particular, the Board recognized that Petitioner has continued his A.A. participation since his last hearing (Exhibit A, pp.40-41, see also Exhibit B); has completed two (2) vocational trades in Vocational Data Processing and Vocational Office Services (Exhibit A, pp.34-37; and Exhibits B and C); and he is currently assigned to Computer Repair Technologies, where Petitioner works as a student aid and has learned further extensive computer skills. (Exhibit A, pp.35-37; and Exhibit B.)

10.  The Board noted that Petitioner had received one (1) CDC 115 Rules Violation Report for pruno in his cell in 1991 (Exhibit A, pp.42-45) and 4 minor CDC 128 Counseling Chronos. (Exhibit A, pp.45-46. See also Exhibit F, Disciplinary Sheet.)

11.  The Board stated that it reviewed the CDC Custody Counselor report but made no further comment on that report. (Exhibit A, p.34:12-13; and Exhibit F, Counselor's Report.)

12.  The Board recognized and read into the record Petitioner's current Psychiatric Evaluation (Exhibit A, pp.47-48; and Exhibit G, Psychological Evaluation) prepared by Doctor Gamard, April 16, 2001, concluding in its decision that the report was "...largely supportive." (Exhibit A, p.66:5-11.)  The Board read and summarized into the record relevant portion(s) of the Doctor Gamard's psychological evaluation, stating that Petitioner has "...no contributory clinical disorder on Axis I and II.  In terms of assessment of dangerous, he said, 'you received only one 115 during your entire incarceration, for possession of inmate manufactured alcohol, in December '92, which he admitted he made in order to celebrate the upcoming New Year.  Therefore it is felt that he would possess a less than average risk for violence when compared to this level II inmate population.  If released into the community, his violence potential is estimated to be no higher that the average citizen in the community.'" (Exhibit A, p.47:2-20.)

13.  The Board discussed in depth and recognized Petitioner's valid parole plans and extensive letters of support (Exhibit A, pp.26-31), with solid job and housing offers in Los Angeles County.  (Exhibit A, pgs.27:11-21 and 30-31.  See Support Letters the to Board, Exhibit H.)

14.  The Board also recognized and reviewed a letter in opposition to parole from the Los Angeles Police Department, mistakenly accusing Petitioner of being an 18th Street Gang member.  (Exhibit A, p.32:3-19.)  Petitioner clarified for the Board that he has never been a gang member (Exhibit A, p.33:19-23), identifying for the Board that it was the victims who claimed to be affiliated to the 18th Street Gang when they were attacking Petitioner and his family members. (Exhibit A, pp.32-33.)  While various claims were raised by the L.A. Police Department and the probation officers report, the Board cleared Petitioner of any gang involvement.  (Exhibit A, pp.46-47.)

15.  For the record, Petitioner answered questions asked by the District

1  Attorney (Exhibit A, pp.55-59), before closing statements were made by the

2  District Attorney (Exhibit A, pp.59-60) and Petitioner's state appointed

3  attorney. (Exhibit A, pp.60-63.)

4      16.   The Board denied parole finding paramount that Petitioner is

5      ...not yet suitable for parole and would pose an unreasonable risk
6      of danger to society or a threat to public safety if released from
       prison....   The first thing that we considered was the commitment
7      offense.  This was a situation where there were multiple victims.
       It is also a situation where there were a lot of other choices that
8      could have been made.  I think we [are] all still kind of left here
       with some questions today about how the second victim got shot....
9      This was apparently a case where [Petitioner] and his family members
       were out for an evening.  They came across the victims... who
10     approached [Petitioner's] family members and... at least one of his
       family members was assaulted.  Ultimately what happened was that
11     [Petitioner], who had a 9-milimeter in his car... used the gun to
       sho[o]t the two victims rather than perhaps using it to threaten
12     them and get everyone out of the area... or... call the police....
       The bottom line is the motive for murdering one person and shooting
13     another one was really trivial in relation to what was going on at
       the time and completely not necessary.  (Exhibit A, pp.64-65.)

14  The Board also found that Petitioner had "...programmed in a somewhat limited

15  manner while he's been incarcerated.  Although he has upgraded vocationally, he

16  has two vocations.  He has had only one disciplinary report while he's been

17  incarcerated... for possession of inmate alcohol and that was back in '92.  He's

18  had four 128 counseling chronos, the last one back in '98."  (Exhibit A, pp.65-

19  66.)

20      17.   The Board noted that the Petitioner does not have an escalating

21  pattern of criminal conduct and no unstable social history.  (Exhibit A, p.65:19-

22  24.)   The Board further noted that Petitioner's psychological evaluation was

23  "...largely supportive..." in that he "...would pose a less than average risk for

24  violence when compared to the Level II inmate population.  And that his violence

25  potential if released to the community is no higher than the average citizen."

26  (Exhibit A, p.66:5-11.)   The Board noted opposition to parole by the District

27  Attorney and the Los Angeles Police Department.  (Exhibit A, p.66:11-15.)   The

28  Board briefly reviewed and then commended Petitioner for positive prison

programming in self-help and vocational training. (Exhibit A, p.66:20.)
"However, currently the positive aspects of his behavior do not outweigh the
factors of unsuitability." (Exhibit A, p.66:20-22.)

18. In a separate decision the Board gave its rationale for denying
Petitioner parole for three (3) years, stating the specific reasons to be that
there were two victims; Petitioner overreacted by resorting to deadly force at
the crime scene; the Board felt Petitioner lied about how he got the handgun used
in the crime, how the second victim was shot and the circumstances surrounding
his 1991 disciplinary report; and the Panel felt Petitioner lacked in presenting
himself as straightforward, insightful or remorseful. (Exhibit A, pp.66-68.)

19. The Board concluded by recommending Petitioner remain in Alcoholics
Anonymous/substance abuse programming, obtain anger management and/or victim
impact self-help and prepare for the following hearing by getting an Olson
Review. (Exhibit A, pp.68-69.)

20. The offense and Victim Factors for Petitioner's offense fall within
the 15 CCR §2403(c) III-B Matrix category, requiring a term of 18-19-20 years.
At the time of the hearing, Petitioner had been in custody for over 15 years, 4
months. When his post-conviction (15 CCR §2410) credits of 61 months are added,
his time served equals 20 years, 1 month. Petitioner is serving an excessive
term for the most aggravated classification of 20 years in the III-B Matrix
category and still does not have a release date. Because Petitioner has served a
term greater in length than the "uniform term" for the gravity of his offense and
no evidence demonstrates that he poses a current threat to public safety, the
gravity of his criminal offense no longer supports a P.C. §3041(b) finding
requiring a longer period of incarceration. Petitioner's imprisonment has become
unlawful.

21. The Board's factual determinations regarding Petitioner's crime are
contrary to clearly established U.S. Supreme Court law. The Board used findings

1   not made by the court of conviction to deny parole in violation of due process
2   and the right to a jury trial. Petitioner's hearing was a pro forma, sham.
3   There was "no evidence" that Petitioner represents a current and unreasonable
4   risk to public safety or that his commitment offense was particularly egregious
5   or beyond the minimum necessary for second degree murder to justify continued
6   incarceration. To the contrary, after 15 years, 4 months of exemplary
7   rehabilitation conduct, the immutable factors of Petitioner's second degree
8   murder offense provide no predictive value of future violence. All current and
9   reliable information before the Board demonstrated that Petitioner was suitable
10  for release on parole. The Board's September 13, 2005 decision was arbitrary and
11  capricious, violating Petitioner's federally protected due process liberty
12  interest. As such, the Board's decision was contrary to clearly established U.S.
13  Supreme Court precedent.

<div align="center">III</div>

15      22. The Superior Court of Los Angeles County in its decision of January
16  30, 2007 denying Petitioner's petition for writ of habeas corpus found that there
17  was some evidence for the Board's three (3) findings to deny parole suitability
18  that multiple victims were attacked, 15 CCR §2402(c)(1)(A); the motive was
19  trivial, 15 CCR §2402(c)(1)(E); and Petitioner's prison programming was limited,
20  15 CCR §2402(d)(9). (See Exhibit I, p.1.) The Superior Court also found some
21  evidence in the Board's unsuitability decision based on a lack of remorse; lack
22  of understanding of the nature and magnitude of the crime; and contradictory
23  testimony regarding the offense and a 14 year old disciplinary violation (Exhibit
24  I, p.1); however, the Superior Court erred on these latter findings, as they
25  reflected the Board's separate decision to deny parole for a period of 3 years.
26  (Exhibit A, pp.66-68.)

27      23. Petitioner's petition for writ of habeas corpus to the California
28  Court of Appeal challenging the Board's and Superior Court's findings was

summarily denied on March 20, 2007.  (Exhibit J.)  The California Supreme Court

denied the petition for writ of habeas corpus without comment on July 25, 2007.

(Exhibit K.)  As such, the Superior Court Order at Exhibit I is the last reasoned

state court opinion.  As will be demonstrated herein, the Board and California

Court findings failed to consider current state and federal law and the actual

evidence of Petitioner's suitability before the Board at the September 13, 2005

parole hearing.  There is no evidence that Petitioner is a current or

unreasonable threat to public safety if released from prison at this time.  As

fully set forth herein, the state courts' refusal to grant Petitioner's relief

from the unconstitutional denial of parole involved both an unreasonable

application of clearly established U.S. Supreme Court law and were based on an

unreasonable determination of the facts in light of the evidence presented.  (28

U.S.C. §2254(d)(1)-(2).)  Petitioner's due process rights have been denied as a

matter of federal and applicable state law, requiring remedy by this U.S.

District Court.

24.  The petition for writ of habeas corpus has been lawfully exhausted in

state court and is now ripe for federal review and adjudication.  Petitioner

submits Petition for Writ of Habeas Corpus and Memorandum of Points and

Authorities and Attachments including one (1) Volume of Exhibits A through K and

Request/Motion for Judicial Notice with Exhibits A through E, incorporated by

reference herein.

25.  Petitioner, Jaime Mijangos, verifies under penalty of perjury that the

foregoing is true and correct.

Dated: 10/21/07       Respectfully Submitted,       Jaime Mijangos,
                                                    In Pro Per

/ / /

/ / /

**PRAYER FOR RELIEF**

Wherefore, Petitioner prays that this court:

1. Issue a writ of habeas corpus or order to show cause to the Director of the CDCR and/or the Board to inquire into the legality of Petitioner's incarceration;

2. Order the immediate release of Petitioner, or alternatively, order the Board to hold a new parole hearing within forty-five (45) days, and, if no new information is presented that establishes that Petitioner poses a present threat of future violence, find Petitioner suitable for parole and set a release date;

3. Conduct an evidentiary hearing to resolve any disputed factual issues, and after the hearing issue an order directing the Board to act as set forth in paragraph 2, above;

4. Order further parole hearings to be timely held and to proceed in a manner that comports with due process as specified by applicable statute and regulation;

5. After the setting of a parole release date, apply all post-term custody time defined by the 15 CCR §2403(c) matrix as "surplus time served" towards Petitioner's maximum parole period, and if five (5) years following the uniform term have passed, grant a discharge free and clear of parole (McQuillion v. Duncan (9th Cir. 2002) 342 F.3d 1012; Martin v. Marshall (N.D. Cal. 2006) 448 F.Supp.2d 1143, 1145; and

6. Grant such other and further relief as justice may require.

Dated: 10/21/07        Respectfully Submitted,

Jaime Mijangos,
In Pro Per

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

**Introduction.**

For the second time Petitioner appeared before the Board for parole consideration and was denied parole based on the unchanging facts of his commitment offense. The September 13, 2005 hearing is devoid of evidence that Petitioner's crime was "particularly egregious" or more than the "minimum necessary" to sustain a conviction of second degree murder, and no post-conviction evidence exists to find that Petitioner is a current or unreasonable threat to public safety and therefore unsuitable for parole. The Board's refusal to set a parole date is a denial of adequate procedural protection and is in direct conflict with the legislative intent of P.C. §3041, which creates and protects Petitioner's liberty interest and presumes that he will be found suitable at his first parole hearing.

**A.    The Offense of May 22, 1990 and the Court's Findings.**

Examining the commitment offense, Petitioner stands convicted of second degree murder. The circumstances of the crime indicate the minimum necessary to sustain a conviction of second degree murder. Like any unlawful killing, the crime is most serious, but when compared to other second degree murders, it is not "especially heinous" within the meaning of 15 CCR §2402(c)(1). Petitioner's spontaneous actions of firing a single shot that resulted in the death of his murder victim and multiple shots that followed immediately thereafter which wounded his second victim were reckless and irresponsible in the heat of the moment (and under the influence of alcohol) when he felt his family and himself to be in jeopardy at the hands of 18th Street Gang members.

The crime arose after Petitioner and his family members left a night club where they had been celebrating his aunt's birthday. Exiting the club, Petitioner and his family members went in different directions to get

to their cars.  Petitioner entered his car and drove around the corner to check on his family members, when he discovered a number of people surrounding his cousin's car.  Driving closer, he saw a man throw a beer bottle which struck his cousin in the face.  He then stopped his car in the street next to his cousin's car.  As he got out to ask what was happening, he saw that there were at least 6 people.  One person started walking towards Petitioner stating that he was an 18th Street Gang member and stating that they were going to kill Petitioner and his family members. Petitioner got back in his car, grabbed a handgun from under the seat and a magazine from the glove box as the man continued to approach.  As Petitioner turned back toward the driver's door, he fired one (1) shot, striking the man in the chest, killing him.  Two other men then started rapidly moving towards the driver's side of the car.  Petitioner put one foot out the car door and fired four (4) warning shots into the pavement in front of the advancing men, striking one of them in the hip/buttocks with one (1) ricocheted bullet.  At this point, everyone fled the scene. Petitioner's wife called police approximately two weeks later to turn him in.

Petitioner had a trial by judge, who found him guilty of express malice second degree murder, assault with a deadly weapon and great bodily injury.[3]  The evidence was clear that Petitioner did not initiate contact with the gang members who attacked his family members.  Petitioner came upon the scene (a melee as the trial judge described it) and attempted to break up the fight.  In the process, the trial judge found that there was insufficient provocation for a finding of voluntary manslaughter.  In convicting Petitioner of second degree murder, the trial judge found that

---

[3] The Board stated that it reviewed Petitioner's file (Exhibit A, pgs.3:25-26 and 34:12-14) and accepted the trial court's findings to be true.  (Exhibit A, p.4:11-12.)

1  Petitioner overreacted to the provocation and deliberately used deadly
2  force to break up the situation.  However, Petitioner was acquitted of
3  first degree murder.  It must also be noted that while Petitioner may have
4  overreacted to the assault on his family and threat to him, it begs the
5  question as to what kind of reaction would have been effective when
6  confronting members of one of Los Angeles' notorious street gangs, whom
7  after one of them had been shot in the chest continued to advance upon
8  Petitioner requiring him to fire additional warning shots.

9      The facts of this crime clearly do not amount to "some evidence" that
10  the criminal act was "particularly egregious" or more than the "minimum
11  necessary" to sustain a second degree murder conviction under the standards
12  espoused in In re Rosenkrantz (2002) 29 Cal.4th 616, 683 and In re
13  Dannenberg, supra, 34 Cal.4th pp.1094-1095.  Petitioner was acquitted of
14  the first degree murder, and he was found guilty in a trial by judge of
15  second degree murder.  While the court ruled that malice was express, the
16  court also found that there was provocation, albeit insufficient for a
17  voluntary manslaughter conviction.  (In re Cooper (2007) 153 Cal.App.4th
18  1043, 1063 [discussing express malice aforethought as common for second
19  degree murder].)  The facts of Petitioner's crime establish that he over-
20  reacted by shooting the approaching gang member and then made another
21  horrible mistake by using an excessive amount force to repel the other gang
22  members with extremely tragic consequences.  However, Petitioner's crime
23  circumstances fall squarely within the 15 CCR §2403(c) Matrix at B-III and
24  can not be said to be more than the minimum necessary to convict petitioner
25  of second degree murder.

26  **Post-Conviction Programming.**

27      As a result of the tragic commitment offense, Petitioner immediately set
28  upon a relentless course of rehabilitation and personal change.

Petitioner has made educational and vocational accomplishments that clearly demonstrate rehabilitation.  Petitioner received his high school equivalency certificate and GED in 1994.  (Exhibit D.)  Petitioner has also participated in self-study classes, receiving certificates of completion in Century 21 Accounting 1 and 2, as well as Entrepreneur Development in 2001.  (Exhibit E.)  Petitioner has received numerous vocational certificates of achievement, and he has completed two (2) vocational trades in Vocational Offices Services in 1994 and Vocational Information Technologies in 2001.  (Exhibit A, pp.34-37; and Exhibit C.)  These accomplishments demonstrate that Petitioner has developed extensive cognitive and vocational skills that will serve him well in society.

Petitioner's personal change has also been enhanced through participation in programs of self-help and laudatory behavior.  As discussed by the Board (Exhibit A, pgs.34-37, 40-41), Petitioner has participated in Alcoholics Anonymous since 2002; completed self-help groups in Amer-I-can Responsibility of Self-Determination Program in 1995; a salesmanship course from the Muslim Development Center in 2001; and received Infectious Disease Awareness training in 2004.  (Exhibit B.)  Petitioner has received numerous laudatory documentations from teachers for his excellent performance as a tutor in academic classes, and he has also been lauded repeatedly by vocational training instructors for his dedication to learning and strong work ethic.  (Exhibit A, pp.37-42; and Exhibit B.)  Petitioner's only blemishes are a disciplinary report he received in 1991 (14 years prior to the September 13, 2005 parole hearing) for inmate manufactured alcohol (Exhibit A, pp.42-45.) and 4 counseling chronos (Exhibit A, pp.45-46), none of which involve any acts of violence.  (See disciplinary record at Exhibit F.)

As a result of Petitioner's participation in self-help, educational and vocational programs, Petitioner's 2001 psychological evaluation is supportive of parole.  (Exhibit A, p.66:5-11.)  Petitioner's violence potential is estimated to

1  be no higher that the average citizen in the community.  (Exhibit A, p.47:2-20;

2  and Exhibit G.)   This evidence from mental health experts and correctional staff

3  verifies Petitioner's personal growth and readiness for parole.  (Exhibits B, C,

4  D, E, F and G.)

5      Petitioner's rehabilitation has provided him unique insight.  Petitioner

6  openly admitted and accepted responsibility for the offense.  (Exhibit A,

7  p.12:11-23.)  There is extensive support for Petitioner's release in the

8  community as demonstrated by numerous of support letters in his prison file.

9  (e.g. Exhibit H; and Exhibit A, pp.26-31.)  Petitioner has realistic parole

10  plans.  (Exhibit A, pgs.27:11-21 and 30-31.)  Not only is there plentiful

11  evidence that Petitioner has changed his life in prison, he has maintained family

12  and social ties with citizens who offer him jobs, housing and social

13  opportunities to ensure his success on parole.  Petitioner's dedication to

14  continuous growth and achievement reflect his sincere rehabilitation.

15

16                          **GROUND I**

17      **PETITIONER HAS A CONSTITUTIONALLY PROTECTED LIBERTY INTEREST
        IN PAROLE AND DUE PROCESS RIGHTS UNDER THE FIFTH AND**

18      **FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION, THAT CAN NOT
        BE INFRINGED UPON BY AN UNCONSTITUTIONAL AND UNREVIEWABLE**

19      **STATE COURT STANDARD OF LAW.**

20  A.  **Federally Protected Liberty Interest In Parole.**

21      The Board violated Petitioner's Fifth and Fourteenth Amendment due process

22  rights at the September 13, 2005 hearing.  It is a well-established principle

23  that a Constitutional protection attaches to a prisoner's interest in parole

24  under P.C. §3041.  As the Ninth Circuit held in McQuillion v. Duncan, supra, 306

25  F.3d p.902, "California's parole scheme gives rise to a cognizable liberty

26  interest in release on parole.  The scheme 'creates a presumption that parole

27  will be granted' unless the statutorily defined determinations were made."

28      McQuillion is based upon U.S. Supreme Court law analyzing the intent and

1  construction of the same "...shall normally..." liberty interest language

2  expressed in P.C. §3041 (Greenholtz, supra, 442 U.S. pgs.7, 11-12; Allen, supra,

3  482 U.S. pgs.376-378, 381; and Perveler v. Estelle, supra, 974 F.2d 1132), and is

4  further expanded upon by the Ninth Circuit's decisions in Biggs, supra, 334 F.3d

5  pp.913-914 and Irons v. Carey, supra, 479 U.S. p.662.  The California Supreme

6  Court's own confirmation of a statutorily defined liberty interest is apparent in

7  the "presumption" and "expectation" of release language found in In re

8  Rosenkrantz, supra, 29 Cal.4th pgs.654, 661, 665, 683, which clearly mimics the

9  language of Allen, supra, 482 U.S. pgs.376-378, 381.

10  **B.  The In re Dannenberg Decision Unlawfully Obstructs and Obscures
       Proportionality In Sentencing, Thereby Violating Petitioner's Due
11     Process and Liberty Interest Rights.**

12      The California Supreme Court has interpreted the parole statutes in a

13  manner that eliminates proportionality mandated by P.C. §§190(a) and 3041(a).

14  Petitioner contends that Dannenberg unlawfully destroys the plain meaning and

15  intent of the parole scheme under the Uniform Determinative Sentencing Act

16  (UDSA).  The Legislature provided P.C. §3041 to govern parole for term-to-life

17  offences under the UDSA.  The language that terms are to be proportionately

18  rendered is crystal clear in the plain meaning of the statutes, with the Board

19  adopting the 15 CCR §§2280 and 2403 matrices to provide proportionate terms.

20      The liberty interest ingrained in P.C. §3041 predates and over-rules the

21  Dannenberg Court's decision,[4] which distorts the language and intent of the

22  statute to conclude that P.C. §3041 provides only a "hope" for parole. (Id.,

23  supra, 34 Cal.4th p.1087.)[5]  Petitioner's liberty interest is a federally

24

25  [4] While the Dannenberg court did not address the federal liberty interest issue (see Sass
    v. California Board of Prison Terms (9th Cir. 2006) 461 F.3d 1123, 1128; and Rosenkrantz
26  v. Marshall (N.D. Cal. 2006) 444 F.Supp.2d 1038, 1077-1080), the effect of Dannenberg
    destroyed the practical application of the liberty interest embedded in P.C. §3041(a).
27  [5] Even after Dannenberg, state courts continue to find that P.C. §3041 creates a liberty
    interest in parole. (In re DeLuna (2005) 126 Cal.App.4th 585, 591; In re Lowe (2005) 130
28  Cal.App.4th 1405, 1421; In re Shaputis (2005) 135 Cal.App.4th 217, 37 Cal.Rptr.3d 324,
    335, depublished at 2006 DJDAR 6008 (May 17, 2006), though not overturned, see
    accompanying Request/Motion for Judicial Notice, Exhibits A and B; In re Elkins (2006) 144

1  protected right that can not be subverted by a state court.  In addition, P.C.

2  §3041 is sustained by a 25 year body of case law requiring parole release dates

3  "shall normally" be set in a uniform manner that may not be retroactively

4  overturned to evade federal due process.  (Peltier v. Wright (9th Cir. 1994) 15

5  F.3d 860, 862; Oxborrow v. Eikenberry (9th Cir. 1989) 877 F.2d 1395, 1399; United

6  States v. Walsh (9th Cir. 1985) 770 F.2d 1490, 1492; and Bouie v. Columbia (1964)

7  378 U.S. 347, 354, 84 S.Ct. 1897, 12 L.Ed.2d 894.)  Hence, Dannenberg is contrary

8  to clearly established U.S. Supreme Court law.

9       The mandate of proportionality and uniformity ingrained in P.C. §3041(a)

10  demands that the Board weigh the gravity of Petitioner's offense against the

11  gravity of other offenses and take into account Petitioner's sentence and 15 CCR

12  §2403(c) matrix term.[6]  (In re Ramirez (2001) 94 Cal.App.4th 549, 570; and In re

13  Rosenkrantz, supra, 29 Cal.App.4th p.683.)  The very language defined by

14  Rosenkrantz and Dannenberg to deny parole based on P.C. §3041(b) offense factors

15  requires that the Board examine like-offenses to determine if a crime is

16  "particularly egregious" or "beyond the minimum necessary to convict."  These

17  factors can not be deduced in isolation; thus, a P.C. 3041(a) like-offense

18  analysis is integral and inseparable to the process of determining parole.[7]

19       Failure to preserve proportionality through repeated parole denials

20  destroys the Legislative intent of P.C. §3041.  (Ramirez, supra, 94 Cal.App.4th

21  p.571, not overturned by Dannenberg, supra, 34 Cal.4th pgs.1096, 1100; and In re

22  Scott I (2001) 119 Cal.App.4th 871, 890-892.)  The Dannenberg decision's shelving

23  of the liberty interest language in P.C. §3041(a) violates the clear statutory

24

25  Cal.App.4th 475, 491-492; In re Weider (2006) 145 Cal.App.4th 570, 587; and In re
    Lawrence, supra, 150 Cal.App.4th p.1531.)

26  [6] While this aspect of Ramirez was rejected in Dannenberg, supra, 34 Cal.4th pgs.1087,
    1100, comparative like-crimes analysis remains valid under Rosenkrantz, supra, 29 Cal.4th

27  p.683.  The Dannenberg court's side-stepping of the plain meaning of P.C. §3041(a)
    violates Petitioner's liberty interest and jeopardizes him of serving a grossly
    disproportionate term.

28  [7] Even in crimes where elements "beyond the minimum necessary" occurred, proportionality
    remains an issue.  (Dannenberg, supra, 34 Cal.4th pgs.1094, 1100.)

intent.  (Id., supra, 34 Cal.4th pgs.1087, 1100)  The Legislature would not have included such language if it did not intend for proportionality to be applied.

The Board has a duty to set terms absent a supported finding that the particular offense was among the most "egregious" and "gravest" of crimes "beyond the minimum necessary to convict." (Rosenkrantz, supra, 29 Cal.4th p.683; and Dannenberg, supra, 34 Cal.4th p.1095.)  The "minimum necessary" standard is arbitrary, unreviewable and unconstitutionally vague, destroying proportionality in the murder statutes.  (P.C. §§190, 1168, 1170, 3041.)  The minimum elements of murder are that a person dies at the hands of another who harbors intent to kill.  Any additional facts are more than minimally necessary.  (Id., supra, 34 Cal.4th dissent pp.1103-1104.)[8]  Yet, valid California law and statutes clearly hold that a panel making a parole suitability decision consider that:

> All violent crimes demonstrate the perpetrator's potential for posing a grave risk to public safety, yet parole is mandatory for felons serving determinate sentences.  (Penal Code §3000, subd.(b)(1).)  The legislature has clearly expressed its intent that when murderers—who are the majority of inmates serving indeterminate sentences—approach their minimum eligible parole date, the Board "shall normally set a parole release date."  (Penal Code §3041, subd.(a).)  The Board's authority to make an exception based on the gravity of a life term inmate's current or past offense should not operate so as to swallow the rule that parole is "normally" to be granted.  Otherwise the Board's case by case rulings would destroy the proportionality contemplated by Penal Code section 3041, subdivision (a), and also by the murder statutes, which provide distinct terms of life without the possibility of parole, 25 years to life, and 15 years to life for various kinds and degrees of murder.  (Penal Code §190 et seq.)  (In re Rosenkrantz, supra, 29 Cal.4th p.683.)

Dannenberg, supra, 34 Cal.4th p.1094, did not contravene this aspect of Rosenkrantz.[9]  In line with Rosenkrantz, supra, 29 Cal.4th pgs.654, 661, 665, 683, the liberty interest of P.C. §3041(a) mandates that parole is the rule, not the exception.  (In re Ernest Smith (2003) 114 Cal.App.4th 343, 351; In re Gray

---

[8] As described in Justice Moreno's dissent, acts not beyond the minimum necessary to convict for murder would result in a manslaughter or acquittal.

[9] Hence, Dannenberg, supra, 34 Cal.4th pgs.1084, 1087, 1094-1095, 1098, 1100, endorsed and did not overrule Rosenkrantz.  Implied over rulings are extremely disfavored.  (Scheiding v. General Motors (2000) 22 Cal.4th 471, 478.)

1  (2007) 151 Cal.App.4th 379, 403; and In re Cooper, supra, 153 Cal.App.4th

2  p.1062.)

3  **C.  Without Any Evidence Demonstrating A Current Threat To Society,
      Petitioner's Liberty Interest Is Violated By Serving A Term Of**

4  **    Incarceration Exceeding The Bright-Line Rule.**

5       As set forth in full at Ground II, Parole can only be denied under P.C.

6  §3041(b) if there is "some evidence" that a prisoner is a current and

7  unreasonable public threat.  (Hill, supra, 472 U.S. pp.454-455; McQuillion,

8  supra, 306 F.3d pp.904-905; and In re Powell (1988) 45 Cal.3d 894, 902-904.)

9  Even upon a "some evidence" finding, the Board is not excused from setting a

10  parole date indefinitely; at some point, continued reliance on unchanging facts

11  will violate due process.  (Biggs, supra, 334 F.3d pgs.914-915 [citing Allen,

12  supra, 482 U.S. p.373 and Greenholtz, supra, 442 U.S. pgs.7, 11-12] and 916-917;

13  and Rosenkrantz v. Marshall, supra, 444 F.Supp.2d pp.1086-1088.)  The Ninth

14  Circuit has defined that point as when a prisoner has "...served the minimum

15  number of years required by his sentence."  (Irons v. Carey, supra, 479 F.3d

16  pp.664-665.)  Petitioner's minimum number of years of his sentence is 17 years,[10]

17  with offense factors in the 15 CCR §2403(c) Matrix III-B term of 18-19-20 years

18  and can not be deemed as amongst the gravest or egregious second degree murders.

19       Nor is there any scintilla of evidence, post-conviction or otherwise, that

20  currently and unreasonable indicates Petitioner to be a public threat.  (15 CCR

21  §2402(a); In re Ernest Smith, supra, 114 Cal.App.4th 343; In re Scott I, supra,

22  119 Cal.App.4th pp.890-892; In re Scott II (2005) 133 Cal.App.4th 573, 600-601,

23  603; In re Wen Lee (2006) 143 Cal.App.4th 1400, 1408-1409; and In re Elkins

24  (2006) 144 Cal.App.4th 475, 499.)  The Board violated Petitioner's liberty

25  interest right by denying him parole based on stale and immutable facts, when he

26  had served 15 years, 4 months and failed to proactively apply any good time

27

28  [10] The California Supreme Court has clearly explained that the minimum number of years
required for a sentence of 15 years-to-life for second degree murder is actually 10 years.
(In re Janice D. (1979) 28 Cal.3d 210, 220 n.10.)

credits.

**D.   Good Time Credit Earning.**

Petitioner has a liberty interest right to good time credit earning. (15 CCR §2410; P.C. §§2931(a) and 3041 et seq.; and <u>Hill</u>, <u>supra</u>, 472 U.S. pp.453-455, citing <u>Wolff v. McDonnell</u> (1974) 418 U.S. 539, 94 S.Ct 2963, 41 L.Ed.2d 935 [holding due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits.].) Petitioner's liberty interest in good time credit earning must be meaningfully applied to reduce his term of imprisonment. With Petitioner's 15 CCR §2410 good time credits of 61 months proactively applied to the 15 years, months already served, he has served an adjusted term of 20 years, 1 month. As such, Petitioner has served the maximum number of calendar years in the 15 CCR §2403(c) III-B matrix of 20 years and is still in custody.

**E.   California Courts Have Failed to Protect Petitioner's Liberty Interest and Due Process Rights, Requiring Federal Review and Remedy.**

As set forth in Ground II, there was no evidence before the Board at the September 13, 2005 hearing that demonstrated Petitioner to be a current or unreasonable threat to public safety. The Superior Court for the County of Los Angeles, the California Court of Appeal and the California Supreme Court have failed to protect Petitioner's due process rights when those courts denied Petitioner's petition for writ of habeas corpus, upholding the unlawful parole denial by the Board. (Exhibits I, J and K.) The state courts' refusal to grant Petitioner's relief from the unconstitutional denial of parole involved an unreasonable application of clearly established U.S. Supreme Court law; and, those denials were based on an unreasonable determination of the facts in light of the evidence presented at the September 13, 2005 parole suitability hearing. (28 U.S.C. §2254(d)(1)-(2).)

GROUND II

**THE BOARD DEPRIVED PETITIONER OF HIS LIBERTY INTEREST AND DUE PROCESS RIGHTS BY REPEATEDLY DENYING HIM PAROLE BASED ON THE UNCHANGING FACTS OF THE COMMITMENT OFFENSE AND IGNORING THE EVIDENCE OF HIS REHABILITATION PROGRAMMING AND CONTINUED EXEMPLARY BEHAVIOR WHILE IN PRISON.**

The determination of Petitioner's parole suitability is protected by procedural safeguards to ensure due process. The Board's factual determinations in Petitioner's case are contrary to clearly established U.S. Supreme Court rulings and the tenets of governing case law.

**A.  Due Process of Law Requires Examination of Petitioner's Case to Protect Petitioner from Serving an Aggravated Term in Prison Based on Factors Not Found by Trial Jury.**

Before considering the rudimentary sufficiency of the Board's findings, the analysis must focus on whether the commitment offense can lawfully be relied upon to deny parole. To the extent that the Board's decision utilizes facts or terminology not found by the jury to deny parole under P.C. §3041(b), the decision violates Apprendi-Blakely-Cunningham.[11] There, the U.S. Supreme Court announced rules that preclude the use of findings not made by a jury to take a case out of the ordinary sentencing range. Thus, findings by the Board not made by the trial court violate the Sixth Amendment.

An arm of the sentencing court, the Board serves a quasijudicial function equivalent to a sentencing judge. (Hornung v. Superior Court (2000) 81 Cal.App.4th 1098, 1099; In re Hogan (1986) 187 Cal.App.3d 819, 824; Sellars v. Procunier (9th Cir. 1981) 641 F.2d 1295, 1304; and O'Bremski v. Maass (9th Cir. 1990) 915 F.2d 418.) When the Board makes findings that the crime involved "...multiple victims..." (Exhibit A, p.64:18), and "...the motive murdering one person and shooting another one was really trivial in relation to what was going

---

[11] Cited herein referring to rules established under Apprendi v. New Jersey (2000) 530 U.S. 466; Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403; and Cunningham v. California (2007) ___U.S.___, 127 S.Ct. 856.

1  on at the time and completely not necessary." (Exhibit A, p.65:9-12), the rules

2  of P.C. §3041 and Apprendi-Blakely-Cunningham are violated since the result

3  removes the case from the requirement that the Board "shall normally" set a

4  uniform matrix term.  While Board's discretion is broad, it is not a "blank

5  check" to deny parole absent findings by the jury on the factual issues relied

6  upon to deny parole.

7       Here, it is not just an absence of findings by the trial judge.  The trial

8  judge explicitly rejected the charge and elements of first degree murder.  Yet,

9  these elements are being utilized by the Board to take Petitioner's term outside

10  the normal 15 CCR §2403(c) matrix range for second degree murder into the range

11  of sentencing reserved for first degree murder.

12       An Apprendi-Blakely-Cunningham analysis is not a "some evidence"

13  evaluation.  It is a legal issue that precludes the Board from relying on

14  findings not found true by the trial judge to deny parole.  The result is that

15  the Board loses jurisdiction to continue to rely on the commitment offense to

16  deny parole.  (Brown v. Poole (9th Cir. 2003) 337 F.3d 1155.)

17  **B.  State and Federal Due Process of Law Under the Some Evidence Test**
18  **Requires Two Levels of Review.**

19       Petitioner's liberty interest in parole is shepherded by the some evidence

20  standard.  (Hill, supra 472 U.S. pp.455-457.)  California courts have adopted the

21  some evidence standard in the parole hearing context.  (In re Powell, supra, 45

22  Cal.3d pp.902-904; In re Ramirez, supra, 94 Cal.App.4th p.564; Rosenkrantz,

23  supra, 29 Cal.4th pgs.658, 665, 683; Dannenberg, supra, 34 Cal.4th p.1095;

24  McQuillion, supra, 306 F.3d pp.904-905; Biggs, supra, 334 F.3d pp.915-916; and

25  Irons v. Carey, supra, 479 F.3d pp.661-665.)  While the threshold of some

26  evidence may be low, it can not be arbitrary.  (Willis v. Kane (N.D. Cal. 2007)

27

28

1  485 F.Supp.2d 1126, 1130, citing <u>Hill</u>, <u>supra</u>, 472 U.S. p.457.)[12]  The application

2  of the some evidence standard requires two levels of review.

3      The first level is a state "some evidence" review under <u>Dannenberg</u> and

4  <u>Rosenkrantz</u> which requires a crime exhibit "particular egregiousness" or "acts

5  beyond the minimum necessary" to be the basis for a parole denial.  A some

6  evidence finding must be based on a factually supported belief that the inmate

7  will commit a violent act and may not be based on whim, caprice or rumor (<u>In re</u>

8  <u>Powell</u>, <u>supra</u>, 45 Cal.3d p.902-904; <u>In re Morrall</u> (2002) 102 Cal.App.4th 280,

9  298-299), and some evidence must be based on some indicia of reliability.  (<u>In re</u>

10  <u>Ramirez</u>, <u>supra</u>, 94 Cal.App.4th p.564; <u>In re Scott II</u>, <u>supra</u>, 133 Cal.App.4th

11  pp.590-591; <u>Biggs</u>, <u>supra</u>, 334 F.3d p.915; <u>McQuillion</u>, <u>supra</u>, 306 F.3d p.904;

12  <u>Rosenkrantz v. Marshall</u>, <u>supra</u>, 444 F.Supp.2d pp.1083-1084; and <u>Hill</u>, <u>supra</u>, 472

13  U.S. pp.455-457.)[13]

14      Penal Code §3041 requires that some evidence must indicate a legitimate

15  concern that the prisoner represents a "current threat."  (<u>In re Ernest Smith</u>,

16  <u>supra</u>, 114 Cal.App.4th pp.365-373; <u>In re Scott I</u>, <u>supra</u>, 119 Cal.App.4th pp.890-

17  892; and <u>Dannenberg</u>, <u>supra</u>, 34 Cal.4th p.1096.)  "The test is not whether some

18  evidence supports the <u>reasons</u> the [Board] cites for denying parole, but whether

19  some evidence indicates a parolee's release <u>unreasonably endangers public</u>

20  <u>safety</u>."  (<u>In re Wen Lee</u>, <u>supra</u>, 143 Cal.App.4th p.1408, emphasis in original; <u>In</u>

21  <u>re Barker</u> (2007) 151 Cal.App.4th 346, 366; <u>In re Elkins</u>, <u>supra</u>, 144 Cal.App.4th

22  p.499 [the Board must <u>not</u> focus on circumstances that may be aggravating in the

23

24  [12] Parole decisions lacking evidentiary support are arbitrary and thereby violate the Due
25  Process Clause of the U.S. Constitution's Fifth and Fourteenth Amendments and the
    California Constitution, Article 1, §7.  (See also <u>Dent v. West Virginia</u> (1899) 129 U.S.
26  114, 124; <u>Wolff</u>, <u>supra</u>, 418 U.S. p.558; and <u>Daniels v. Williams</u> (1986) 474 U.S. 327, 331.)
    [13] "Some evidence" does not mean literally "any" evidence.  If it did, the protection
27  afforded by due process would be meaningless. (<u>Rosenkrantz v. Marshall</u>, <u>supra</u>, 444
    F.Supp.2d pp.1083-1084, citing Gerald L. Newman, "The Constitutional Requirement of Some
28  Evidence" (1988) 25 San Diego L.Rev. 631, 663-664, noting "The [due process] protection of
    the 'some evidence' requirement demands... less than legal 'sufficiency' of evidence, but
    more than a trivial charade."

1   abstract; rather, it <u>must</u> focus on fact(s) indicating the parole would currently

2   pose "...an unreasonable risk of danger to society"]; <u>In re Lawrence</u>, <u>supra</u>, 150

3   Cal.App.4th pgs.1532-1533, 1541-1542; and <u>In re Cooper</u>, <u>supra</u>, 153 Cal.App.4th

4   pp.1059-1061.)  "[T]he overreaching consideration in the suitability

5   determination is whether the inmate is currently a threat to public safety." (<u>In</u>

6   <u>re Weider</u>, <u>supra</u>, 145 Cal.App.4th p.589.)  Some evidence of a particular factor

7   found by the Board does not necessarily equate to some evidence that the

8   parolee's release poses an unreasonable risk to public safety.  (<u>In re Wen Lee</u>,

9   <u>supra</u>, 143 Cal.App.4th pp.1408-1409 n.3.)

10       No evidence in Petitioner's commitment offense justifies parole denial.

11  Since the facts of Petitioner's second degree murder conviction bear no evidence

12  beyond the "minimum necessary," as a matter of law, the crime cannot defer

13  setting a parole date after two hearings and fifteen and one-half calendar years

14  in prison.  The trial judge's finding rejecting the first degree murder charge is

15  sufficient to preclude the use of the crime as evidence of unsuitability, as

16  continued use of the crime has pushed Petitioner's adjusted time served beyond

17  the maximum of 20 years allowed by the 15 CCR 2403(c) B-III Matrix.  (See <u>Little</u>

18  <u>v. Hadden</u> (1980) 504 F.Supp 558, 562.)  The facts of the Petitioner's crime

19  certainly do not contain evidence that went beyond the minimum necessary to

20  establish the elements for an "express malice" second degree murder.  (<u>In re</u>

21  <u>Cooper</u>, <u>supra</u>, 153 Cal.App.4th p.1063 [express malice aforethought common in

22  second degree murder convictions].)  The evidence was easily susceptible to a

23  voluntary manslaughter interpretation, on the theory of provocation, but just

24  went too far, as the provocation was not adequate to negate express malice.  Even

25  if Petitioner's crime was egregious enough to supply some evidence under

26  <u>Dannenberg</u> initially, the crime has now become too old to satisfy the federal

27  some evidence requirements under <u>Irons v. Carey</u>.  (<u>In re Lawrence</u>, <u>supra</u>, 150

28  Cal.App.4th p.1553 and, generally, pgs.1539-1540, 1552-1563.)

1    The second level of review is under the federal "some evidence" analysis

2  noted by the Ninth Circuit in Biggs.  The Biggs court discussed the limits on

3  using immutable facts to deny parole in the face of evidence of rehabilitation.

4         [While] the [California] parole board's sole reliance on the gravity
          of the offense can initially be justified as fulfilling the
5         requirements set forth by state law... over time should [Petitioner]
          continue to demonstrate exemplary behavior and evidence of
6         rehabilitation, denying him a parole date simply because of the
          nature of [his] offense... would raise serious questions involving
7         his liberty interest in parole.... [¶] A continued reliance on the
          circumstances of his offense... runs contrary to the rehabilitative
8         goals espoused by the prison system and could result in a due
          process violation."  (Id., supra, 334 F.3d pp.916-917.)

9  The Biggs rationale has been consistently upheld.  (Martin v. Marshall, (N.D.

10  Cal. 2006) 431 F.Supp.2d 1038, 1046-1048; Rosenkrantz v. Marshall, supra, 444

11  F.Supp.2d pp.1084-1085; Sanchez v. Kane (C.D. Cal. 2006) 444 F.Supp.2d 1049,

12  1062; In re Scott II, supra, 133 Cal.App.4th p.595; In re Wen Lee, supra, 143

13  Cal.App.4th pp.1409-1413; In re Elkins, supra, 144 Cal.App.4th pp.495-502; and In

14  re Lawrence, supra, 150 Cal.App.4th pgs.1538-1540, 1556-1563.)  The Ninth Circuit

15  has now explicitly defined the rule of Biggs where the minimum number of years of

16  the sentence is the limit for the use of crime factors beyond the minimum

17  necessary to convict as some evidence to deny parole.  (Irons v. Carey, supra,

18  479 F.3d pp.661-665.)  Hence, a clear and concise bright-line applies once a

19  prisoner has "...served the minimum number of years required by his sentence."

20  (Irons v. Carey, supra, 479 F.3d pp.664-665; and Willis v. Kane, supra, 485

21  F.Supp.2d pgs.1129-1130, 1135-1136 [applying the bright-line rule.].)

22    Petitioner has been in custody 15 years, 4 months; is 3 years beyond his

23  MEPD; has served an adjusted term with good time credits of 21 years, 1 month;

24  and the only reason that he has not had more than two parole hearings is that the

25  Board improperly used multiple year denials.  The evidence of Petitioner's

26  rehabilitation is plentiful.  (Exhibit A, pgs.28-31 and 34-49; and Exhibits B, C,

27  D and E.)  Staff psychologists establish Petitioner as having a violence

28  potential no higher than the average citizen.  (Exhibit A, p.47:2-20; and Exhibit

G.)

Petitioner's initial Board panel have gave directives for to Petitioner to achieve suitability. Petitioner has met those directives to the best of his abilities. If the crime was to forever impede parole, compliance with these directives would be an idle act. The Board has a duty to make all recommendations "sufficiently clear" to inform Petitioner what conduct will result in a grant of parole. (U.S. v. Guagliardo (9th Cir. 2002) 278 F.3d 868, 872, citing Grayned v. City of Rockford (1972) 408 U.S. 104, 108-109; and Greenholtz, supra, 442 U.S. p.15.)

Nor was there any pre- or post-conviction evidence that would preclude the Board from granting parole. The Board's denial constitutes a denial of the aforementioned procedural protections in direct conflict with the Board's rules (15 CCR §2400 et seq.), the sole purpose of which are to facilitate the determination of parole under P.C. §3041. There is no evidence to support the Board's denial based on a current and unreasonable risk to society.

C.  **The Board's Findings of Unsuitability Do Not Amount to Some Evidence and Violate Due Process of Law.**

In violation of clearly established law, and consistent with the commonly utilized script of Denial Form BPT 1000a, the Board found that Petitioner was unsuitable for parole under 15 CCR §2402(c)(1)[14] that there were "multiple victims, with one injured and one was killed, (Exhibit A, p. 64:15-18), proving unsuitability under 15 CCR §2402(c)(1)(A). The Board ruled that "...the motive for murdering one person and shooting another one was really trivial in relation

---

[14] A finding of any factor under 15 CCR §2402(c)(1)(A-E) means that the Board has determined "[t]he prisoner committed the offense in an especially heinous, atrocious, or cruel manner." The Board derived this regulation from the language found in P.C. §190.2(a)(14): "the murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity." This is a special circumstance allegation prescribed by the Legislature to justify imposition of a sentence of death or life without the possibility of parole. The use of such factors to find Petitioner unsuitable for parole violates due process of law because Petitioner's offense was not in a special circumstance category. Moreover, casting Petitioner's criminal conduct (an implied malice unintentional second degree murder) as a special circumstance offense is arbitrary and capricious.

1  to what was going on at the time and completely not necessary" (Exhibit A,

2  p.65:9-12), to justify unsuitability under 15 CCR §2402(c)(1)(E). (Exhibit A,

3  pp.103-104.) The Board further stated unsuitability factors under 15 CCR

4  §2302(d)(9), stated that Petitioner has "...programmed in a limited manner while

5  incarcerated" (Exhibit A, p.65:24-25.) and "[h]e has had only one 115

6  disciplinary report while he's been incarcerated... and "...four 128A Counseling

7  chronos, the last one back in '98." (Exhibit A, pp.65-66.)

8      The term "especially" found in 15 CCR §2402(c)(1) connotes a heightened

9  level beyond what is normally present in a finding of actual malice. While

10 Petitioner's commitment offense is certainly tragic, in order for the Board to

11 rely upon it as the sole (or even primary) reason for denying parole, it must be

12 clear from the facts that the crime is "especially heinous, atrocious or cruel"

13 in a way that sets it apart from the vast majority of other second degree murders

14 as amongst the "gravest" of those offenses. (15 CCR §2402(c)(1); see In re

15 Ramirez, supra, 94 Cal.App.4th p.570, Rosenkrantz, supra, 29 Cal.4th p.683, and

16 In re Dannenberg, supra, 34 Cal.4th pp.1094-1095.) Petitioner's offense simply

17 can not be said to be dramatically more "callous" than most other murders, and

18 certainly not of a caliber equivalent to the higher-end first degree murders,

19 which include premeditated and deliberated torture killings. (In re Lawrence,

20 supra, 150 Cal.App.4th pp.1556-1558.) In fact, Petitioner's crime factors share

21 many of the attributes of traditional "heat of passion" and/or "self-defense"

22 voluntary manslaughter, but without enough provocation to fully negate a finding

23 of express malice.

24      As compared with other second degree murders, which by definition include

25 intentional killings, the crime is not "particularly egregious," and certainly no

26 more than the minimum necessary to sustain a conviction of second degree murder

27 occurred in the base offense, which was confirmed by the trial judge's verdict as

28 previously discussed herein. (In re Cooper, supra, 153 Cal.App.4th p.1063

[discussing express malice in second degree murder].)  The Board's findings attempt to impress a level of malicious intent upon Petitioner's crime factors beyond what was found by the trial judge.  (Apprendi-Blakely-Cunningham, supra.) Therefore, a finding that the crime prevented the Board from setting a parole date at two (2) hearings over a four (4) year period (3 years, 3 months after Petitioner's MEPD) is legally unsupportable.  Penal Code §3041 requires the Board to "normally" set a parole date, and that mandate applies to Petitioner.  (See In re Rosenkrantz, supra, 29 Cal.4th p.683; In re Ernest Smith, supra, 114 Cal.App.4th p.351; In re Weider, supra, 145 Cal.App.4th p.589; In re Gray, supra, 151 Cal.App.4th p.403 [parole is the norm, not the exception for second degree murder]; and Biggs, supra, 334 F.3d p.916.)

As argued herein, there is no evidence that Petitioner's offense was heinous, atrocious or cruel that would indicate Petitioner to be a current or unreasonable risk to society and thereby unsuitable for parole.

The Board's finding that multiple victims were attacked, 15 CCR §2402(c)(1)(A), is insufficient to support a finding of unsuitability.

Only one shot was fired at close range that killed the murder victim, who had stopped assaulting Petitioner's family members and had run around the car to assault Petitioner on the driver's side.  Petitioner fired the single shot from the driver's seat, leaning from the passenger seat, immediately after retrieving the gun from under the seat and charging a round into the chamber.  The victim was struck in the chest and killed instantly, falling back into the street. Immediately thereafter and sitting in the driver's seat firing out of the space between the door and door jam, Petitioner fired four (4) rounds at the ground in the direction of the second victim (and other gang members) as "warning" shots," intending to stop them from continuing to approach the driver's side.  While there is no excuse for the resulting tragedy, the fact that Petitioner's crime involved multiple victims does not preclude the Board from finding him suitable

1   for parole.  (In re Wen Lee, supra, 143 Cal.App.4th p.1413 [where killing an

2   unintended or accidental victim with 5 shots fired and multiple victims involved

3   does not constitute an act beyond the minimum necessary for second degree

4   murder]; In re Weider, supra, 145 Cal.App.4th p.589 [holding the fact of multiple

5   victims being inadvertent or a happenstance occurrence of 5 shots being fired in

6   a bar, killing 1 and injuring 2 victims, can not support an unsuitability finding

7   of multiple victims]; Martin v. Marshall, supra, 431 F.Supp.2d p.1040 [where

8   crime factors involve multiple shots fired striking 3 people, killing 2, in a

9   crowded restaurant are not particularly egregious] and pp.1046-1048 [where crime

10  factors can not continuously be used to deny parole without violating due

11  process.]; and In re Barker, supra, 151 Cal.App.4th pp.372-377 [where the

12  immutable facts of a planned triple murder involving multiple gunshots and

13  bludgeoning does not support any predictive value and constitutes dual use after

14  a prisoner has demonstrated rehabilitative programming.].)

15       Petitioner acted immediately to what he perceived to be a threat to his

16  family members and himself by gang members, resulting in death and injury.  The

17  trial court ran concurrently the assault with a deadly weapon and great bodily

18  injury charges, rightfully acknowledging that a "single event" (the melee and

19  shootings) resulted in multiple consequences.  Denying Petitioner parole at two

20  consecutive hearings based on a finding of multiple victims being attacked

21  negates the facts of the case and the trial court's purpose of concurrent

22  sentencing and Petitioner's due process rights.  (Biggs, supra, 334 F.3d p.916-

23  917; and In re Barker, supra, 151 Cal.App.4th p.374 [regarding unlawful dual use

24  of facts in determining parole suitability].)  While the Board may aggravate

25  setting Petitioner's base term under 15 CCR §2404(a)(13) for multiple victims, to

26  do so would be double counting and improper at this point because Petitioner has

27  already served a good-time adjusted aggravated term in prison of 20 years, 1

28  month, which is beyond the sentence prescribed by the Matrix for his crime

1  circumstances.  (15 CCR §2403(c), III-B, 18-19-20 years.)

2       There is no evidence for the Board, the Superior Court of Los Angeles, the

3  Court of Appeal or the California Supreme Court to reliably demonstrate that

4  multiple victims in Petitioner's case indicates that he is a current or

5  unreasonable threat to public safety to deny parole suitability.  (See e.g. In re

6  Wen Lee, supra, 143 Cal.App.4th pp.1408-1414; In re Elkins, supra, 144

7  Cal.App.4th p.499; and In re Weider, supra, 145 Cal.App.4th p.589.)

8       The motive for this crime of anger and fright (imperfect defense of self

9  and family while being threatened and attacked by gang members) is hardly

10  inexplicable or trivial and can not support an unsuitability finding under 15 CCR

11  §2402(c)(1)(E), inexplicable or very trivial motive.  While the crime is not

12  justifiable, justification or excuse is not a requirement to be found suitable,

13  as the absence of justification or excuse is the very element of the convicted

14  offense.  (See In re Scott I, supra, 119 Cal.App.4th pp.892-893.  Also see

15  Rosenkrantz v. Marshall, supra, 444 F.Supp.2d p.1082.)  The motive for the crime

16  is explainable, just not excusable, by virtue of Petitioner's frightened, angered

17  and overwhelmed state.  Stating that the motive for the death was trivial implies

18  that the killing was dispassionate.  This is an improper designation of

19  Petitioner's offense because the trial court acquitted Petitioner of first degree

20  murder.  (Apprendi-Blakely-Cunningham, supra; In re Scott I, supra, 119 Cal

21  App.4th pp.889-890; and In re Shaputis, supra, 37 Cal.Rptr.3d p.333; and In re

22  Weider, supra, 145 Cal.App.4th p.588 [where being angry or distraught negates the

23  Board's ability to find a crime dispassionate or calculated.].)

24       Petitioner was simply scared[15] (for himself and his family) and angry, with

25  his judgment impaired by emotion and alcohol, and these factors led to a tragic

26  death where Petitioner failed to use a reasonable amount of force to stop the

27  _____

28  [15] See Exhibit A, pgs.12:4-19 and 16:16-24, where Petitioner discussed being scared with the Board commissioners.  Also see 2001 Psychological Evaluation at page 4, where Petitioner admitted "...that he overreacted to the situation out of fear and panic."

1  melee.  In re Scott I also makes it clear that fear and anger are commonplace

2  motives for murder.  (Id., supra, 119 Cal.App.4th pp.892-893.)  It should further

3  be noted that when an offense is so serious that it results in death, any motive

4  would be trivial.  (In re Barker, supra, 151 Cal.App.4th p.374.)  If the motive

5  justified or excused the killing, it would not be a crime.[16]  Petitioner need not

6  negate his guilt of the crime before being paroled.  Parole is for the guilty—

7  not the innocent.

8      Neither multiple victims nor trivial motive in Petitioner's case

9  demonstrate an exceptionally heinous, atrocious or cruel offense characteristic

10  under 15 CCR §2402(c)(1)(A) and (E).  While either factor can support a denial of

11  parole independently, they do not point to offense characteristics by the

12  Petitioner that were more than the minimum necessary to convict for second degree

13  murder, nor were these characteristics particularly egregious in a way that would

14  set them apart from other instances of express malice second degree murder.

15  Hence, the Board's multiple victims and trivial motive findings of Petitioner's

16  offense and the state courts' reliance on those factors (Exhibits I, J and K)

17  does not provide evidence that reliably or rationally supports a finding of

18  unsuitability or indicate that Petitioner is currently or unreasonably a threat

19  to public safety.

20      Furthermore, the Superior Court of Los Angeles County's holding that the

21  Board lawfully relied on the regulatory factors of multiple victims, 15 CCR

22

23  [16] The Board in its decision also speculated that Petitioner should have called the police
24  (before or after the shooting) or just used the gun to scare the gang members off or made
    different choices.  None of these statements can be construed as evidence to support a
25  finding of unsuitability under a trivial motive, as they are "after the fact" assumptions
    of what Petitioner "should have done."  (In re Elkins, supra, 144 Cal.App.4th p.497; In re
26  Barker, supra, 151 Cal.App.4th p.375; and In re Cooper, supra, 153 Cal.App.4th p.1064.)
    The fact of the matter is what Petitioner "did."  Petitioner was scared for his own life
27  and those of his family members, and he overreacted to the situation with deadly force.
    While Petitioner's post-offense behavior was irrational (fleeing the scene and not calling
28  police until he was turned in two weeks later by his wife), it does not point to evidence
    that his behavior was particularly egregious.  Nor do any of these speculations by the
    Board point to evidence that Petitioner is currently a threat to public safety.

1  §2402(c)(1)(A), and trivial motive, 15 CCR §2402(c)(1)(E), does not rationally or

2  reliably point to some evidence that Petitioner is a current or unreasonable

3  threat to public safety.   Respectfully, the Superior Court simply pointed to

4  those regulatory factors found by the Board without bothering to demonstrate how

5  those 15 year old factors now show Petitioner to be a current or unreasonable

6  threat.  (Exhibit I.)   The Court of Appeal and the California Supreme Court

7  summary denial provided no further justification or insight.   (Exhibits J and K.)

8  The state court rulings, therefore, violate due process of law and the tenets of

9  how some evidence must be applied in parole suitability hearings under California

10  law.  (15 CCR 2402(b); In re Wen Lee, supra, 143 Cal.App.4th pp.1408-1409 and

11  n.3; In re Elkins, supra, 144 Cal.App.4th p.499; and In re Weider, supra, 145

12  Cal.App.4th p.589.)

13       The Board's statement that Petitioner has "...programmed in a somewhat

14  limited manner while he's been incarcerated" (Exhibit A, p.65:24-25) to provide

15  for unsuitability under 15 CCR § 2402(d)(9) is a contradiction of the evidence

16  before the Board.   The Board recognized that Petitioner is currently working in a

17  computer technology assignment (Exhibit A, pp.34-37), where he is able to apply

18  and expand upon his two existing vocational achievements.   (Exhibit A, p.18-21.)

19  In fact, Petitioner's current work reports state that he is doing "exceptionally

20  well in Computer Technology as a teachers aid.   (Exhibit A, p.35:11-13; and

21  Exhibit B.)   Petitioner's current TABE score is 7.8, and he earned his GED in

22  1994.  (Exhibit A, p.35:14-18.)

23       The Board also recognized that Petitioner has participated in numerous

24  self-study classes through the Muslim Center and the Education Department.

25  (Exhibit A, pp.37-38; and Exhibits B, D and E.)   Furthermore, the Board reviewed

26  Petitioner's record of Alcoholics Anonymous attendance (Exhibit A, pp.40-41); his

27  completion of IPEP disease prevention classes (exhibit A, p.41:21-24 and Exhibit

28  B); and his completion of the Amer-I-can self-help program (Exhibit A, p.41:24-25

1  and Exhibit B).   In its decision, the Board stated:

2        "We want to commend [Petitioner] for the work that he's been doing.
3        He has, let's see here, he started in 2003, participating in AA.  He
       participated in [Amer-I-can] Life skills.  And as I noted earlier,
4        he has completed two vocations.  However, currently the positive
       aspects of his behavior do not outweigh the factors of
5        unsuitability."  (Exhibit A, p.66:16-19.)

6  In light of the extensive evidence of Petitioner's rehabilitation programming,

7  the Board's decision, after reviewing Petitioner's file (Exhibit A, pgs.3:25-26

8  and 34:12-13) and extensive program record, can only be seen as arbitrary and

9  capricious, in violation of due process of law.  (See Hill, supra, 472 U.S.

10  p.457; Biggs, supra, 334 F.3d 916-917; Rosenkrantz v. Marshall, supra, 444

11  F.Supp.2d pp.1086-1087; Martin v. Marshall, supra, 431 F.Supp.2d p.1047; Willis

12  v. Kane, supra, 485 F.Supp.2d pp.1135-1137; and In re Lawrence, supra, 150

13  Cal.App.4th pgs.1534-1535, 1562.)

14       Petitioner has not failed to program in prison.  His efforts have been

15  genuine, and he has utilized every possible opportunity in prison to better

16  himself.  Petitioner's institutional behavior, indeed, demonstrates "...an

17  enhanced ability to function within the law upon release."  (15 CCR §2402(d)(9).)

18  A finding of unsuitability by the Board under 15 CCR 2402(d))(9) and summary

19  holding(s) devoid of valid rationale in support of that denial by the Los Angeles

20  County Superior Court (Exhibit I), the California Court of Appeal (Exhibit J) and

21  the California Supreme Court (Exhibit K), in clear contradiction of the evidence

22  of his actual rehabilitation (Exhibits A, B, C, D, E, F and G), does not amount

23  to some evidence that Petitioner is currently or unreasonably a threat to public

24  safety.  (15 CCR 2402(b); In re Wen Lee, supra, 143 Cal.App.4th pp.1408-1409 and

25  n.3; In re Elkins, supra, 144 Cal.App.4th p.499; and In re Weider, supra, 145

26  Cal.App.4th p.589.)

27       The Board's intent is unclear when it cited Petitioner's disciplinary

28  history in its decision as to whether his disciplinary record is a reason to deny

1   parole under 15 CCR § 2402(d)(9) or simply a reflection of Petitioner's prison

2   programming. (Exhibit A, pp.65-66.) Nevertheless, Petitioner's disciplinary

3   record is minimal and presents no post-conviction evidence that he is a current

4   or unreasonable threat to public safety.

5        Contrary to the Board's finding, Petitioner's 2001 psychological evaluation

6   declared that Petitioner's CDC 115 disciplinary for manufacture of pruno in 1991

7   indicated no risk of danger to society more than the average citizen if paroled.

8   (Exhibit A, p. 34:9-20; and Exhibit G, p.5.) In addition, The Board has ignored

9   Petitioner's exemplary prison record and proceeded to deny him parole 2 times, a

10  situation specifically addressed by the Ninth Circuit in Biggs, supra, 334 F.3d

11  pp.916-917 and Irons v. Carey, supra, 479 F.3d pp.664-665. Petitioner has been

12  free of serious rules violations since 1991, approximately 14 years at the time

13  of the 2005 hearing. Petitioner's one serious rule violation was for possession

14  of pruno, to which he admitted. (Exhibit A, p.44:13-14.) Besides the CDC 115

15  rules violation in 1991, Petitioner also has received four (4) minor 128A

16  counseling chronos, none of which represent a current threat to public safety or

17  some evidence to deny parole.[17]  (In re Mark Smith (2003) 109 Cal.App.4th 489,

18  505.) The evidence before the Board in Petitioner's 2001 Psychological

19  Evaluation was that "[t]his inmate is competent and responsible for his behavior.

20  He has the capacity to abide by institutional standards and has generally done so

21  during his entire incarceration period." (Exhibit G, p.5.)

22       Petitioner's sparse instances of disciplinary violations provide no

23  evidence that Petitioner would be an unreasonable threat if paroled. (In re

24  Lawrence, supra, 59 Cal.Rptr.3d p.571.) Moreover, there is no history of any

25  violence in Petitioner's disciplinary record that would indicate that he is a

26  current threat to the public safety. (Rosenkrantz v. Marshall, supra, 444

27

28  [17] Petitioner's CDC 128A counseling chronos were for gambling (1-15-96); not in possession
    of an identification card (2-27-96); not standing for count (11-30-96; and failure to
    report (2-28-98). See Exhibit F, disciplinary page.

F.Supp.2d p.1087 n.20; In re Barker, supra, 151 Cal.App.4th pp.355-356; and Willis v. Kane, supra, 485 F.Supp.2d p.1135.)  Having a disciplinary record, even a violent one, does not preclude parole suitability.  Numerous instances of published case law also demonstrate that a serious disciplinary history can not forever trump parole suitability.  (In re Ramirez, supra, 94 Cal.App.4th p.386; In re Mark Smith, supra, 109 Cal.App.4th p.505; In re Elkins, supra, 144 Cal.App.4th pp.483-485; In re Gray, supra, 59 Cal.Rptr.3d p.730; In re Barker, supra, 151 Cal.App.4th pp.355-356; Martin v. Marshall, supra, 431 F.Supp.2d p.1042; and Willis v. Kane, supra, 485 F.Supp.2d p.1135.)

Nor did the Superior Court of Los Angeles County, the California Court of Appeal or the California Supreme Court shed any light in their summary holding(s) on exactly how Petitioner's single rules violation (14 years in the past and devoid of any violence) could demonstrate that Petitioner is a current or unreasonable threat to public safety if released from prison.  (Exhibits I, J and K.)  The Board's finding and the lower courts holdings are contrary to the evidence on record and violate due process of law.  (15 CCR 2402(b); In re Wen Lee, supra, 143 Cal.App.4th pp.1408-1409 and n.3; In re Elkins, supra, 144 Cal.App.4th p.499; and In re Weider, supra, 145 Cal.App.4th p.589.)

None of the other factors tending to show unsuitability in 15 CCR §2402(c) apply, as Petitioner has (2) no previous record of violence;[18]  (3) Petitioner has no history of tumultuous relations with others that would indicate an unstable social history; (4) no record of sadistic offenses; (5) no history of psychological problems; and (6) his institutional behavior has been exemplary.

---

[18] See In re Scott II, supra, 133 Cal.App.4th p.602 where the fact that Petitioner "...lacks any significant history of violent crime ([15 CCR) 2402(d)(6) tends to show him suitable for release on parole." (Id. At 926.)

**D.    The Superior Court's Findings Outside the Board's Findings of Unsuitability Do Not Amount to Some Evidence to Deny Parole.**

While the Board cited crime and post-conviction factors in its "separate decision" to deny parole for three (3) years (Exhibit A, pp.66-68), Petitioner did not initially challenge the Board's rationale for a multiple year denial in the petition for writ of habeas corpus to the Superior Court of Los Angeles County. As extensively argued herein, the factors of unsuitability that the Board cited in its findings (Exhibit A, pp.64-66) do not amount to some evidence that Petitioner is a current or unreasonable threat to public safety. Therefore, any findings made by the Board to support a multiple year denial are moot.

The Superior Court of Los Angeles County, however, cited findings in its holding (Exhibit I) from the Board's "separate decision" to delay another suitability hearing for 3 years (Exhibit A, pp.66-68) as some evidence to support the Board's "unsuitability decision." The Court held:

> "...the Board also cited to petitioner's lack of remorse indicating that he does not understand the nature and magnitude of his crime, stating that 'there's nothing about your presentation today that came across as straightforward, insightful or remorseful.' The Board based its finding on petitioner's contradictory testimony regarding the circumstances of the crime and his disciplinary violation of inmate-manufactured alcohol." (Exhibit I.)

It appears not only did the Superior Court err in relying on these moot issues to uphold the Board's unsuitability decision, it failed to examine the hearing record and the evidence provided by the petition for writ of habeas corpus and exhibits. Further, The California Court of Appeal and the California Supreme Court in their summary denials (Exhibits J and K) provided no guidance or further justification on these issues outside the Board's suitability decision.

Evidence in the hearing record demonstrates that Petitioner indeed understands the nature and magnitude of his offense, as well as the fact that Petitioner is remorseful for his crime. (See Exhibit A, pgs.7-19, 45-49.) Most telling is the Psychological Evaluation, which notes that Petitioner expresses

genuine remorse for the murder victim and sincere regret and sorrow for the

victim's family members and shows a full understanding of his responsibility in

the underlying offense.  (Exhibit G, pp.4-5.)  Petitioner's remorse is clearly

demonstrated in the hearing record and the psychological evaluation and must

support a finding of suitability by the Board and Superior Court.  (In re Wen

Lee, supra, 143 Cal.App.4th pp.1413-1414 [acceptance of responsibility and

remorse indicates suitability for parole.]; In re Elkins, supra, 143 Cal.App.4th

pp.493-495; Sanchez v. Kane, supra, 444 F.Supp.2d p.1062 [remorse is a mutable

crime factor, over time, that indicates parole suitability]; and Willis v. Kane,

supra, 485 F.Supp.2d p.1135.)

      The evidence on record before the Court(s) was that Petitioner did his best

to explain the crime, pre- and post-conviction circumstances inquired by the

Board.  (Exhibit A, pgs.7-19, 19-25 and 28-49.)  Petitioner answered all

questions asked by the Board to the best of his ability.  While the Panel may

dislike the answers, that is not a valid reason to prolong or deny parole.

Petitioner is not required to accept the Board's interpretation of the crime

circumstances or other events.  (Penal Code §5011(b) and 15 CCR §2236.)  Most

importantly, neither the circumstances surrounding how Petitioner obtained the

firearm or any other crime fact that may have been in contention (immutable pre-

offense characteristics) or his explanation of his participation in a 14 year old

non-violent disciplinary violation[19] provide any shred of evidence that Petitioner

is currently an unreasonable threat to public safety.

      As required by Penal Code §3041 et seq. and 15 CCR 2402(b), the Board and

the California Courts must only rely on some evidence that Petitioner's release

would currently and unreasonably threaten the public safety.  (In re Wen Lee,

supra, 143 Cal.App.4th pp.1408-1409 and n.3; In re Elkins, supra, 144 Cal.App.4th

p.499; and In re Weider, supra, 145 Cal.App.4th p.589.)  As demonstrated herein,

---

[19] This issue has been treated extensively ante.

The Board, the Superior Court, Court of Appeal and the California Supreme Court provided no evidence that Petitioner is unsuitable for parole, and all evidence weighs in favor of Petitioner's release from custody.

**E.  Factors of Suitability Undeniably Demonstrate Actual Rehabilitation which Mandates Petitioner's Suitability and Release on Parole.**

Petitioner is overwhelmingly suitable under every factor that demonstrates suitability for parole under 15 CCR §2402(d)(1 through 9) as follows:

(1)  Petitioner has no criminal history at all, juvenile or adult, other than the commitment offense.  (Exhibit A, p.32:17-20.)

(2)  Petitioner's central file contains numerous letters of support (such as those in Exhibit H), including offers of housing and employment, recounting strong and enduring friendships, trust, respect and support for the Petitioner. These letters are a testament to Petitioner's stable social history and are further reflected in numerous laudatory chronos from his central file written by institutional staff, teachers and supervisors.  (See Exhibit B.)  Petitioner has experienced a life devoid of tumultuous relationships both inside and out of prison.  (In re Barker, supra, 151 Cal.App.4th p.370 [finding that support letters indicate stable social relationships.].)

(3)  Petitioner's psychological evaluation noted that he expresses genuine remorse for the murder victim and sincere regret and sorrow for the victim's family members and shows a full understanding of his responsibility in the commitment offense.  (Exhibit G, p.4.)  Examples of Petitioner's awareness and remorse can easily be reviewed in Exhibit A, pgs.7-19, 45-49.  (Also see In re Wen Lee, supra, 143 Cal.App.4th pp.1413-1414 [responsibility and remorse indicate suitability]; In re Elkins, supra, 144 Cal.App.4th pp.493-495; In re Lawrence, supra, 150 Cal.App.4th pp.1554-1556; In re Barker, supra, 151 Cal.App.4th pp.368-369; Sanchez v. Kane, supra, 444 F.Supp.2d p.1062 [remorse is a mutable crime factor that indicates suitability]; and Willis v. Kane, supra, 485 F.Supp.2d p.1135.)

(4)  It is well documented that Petitioner's crime was committed during a moment of significant stress, after discovering his family involved in a melee with gang members and after being threatened by the same gang members.  Unskilled in how to cope or deal with this high stress level Petitioner was unable to handle the antagonism and provocation of gang members in a healthy manner.  The situational stresses of the moment and Petitioner's intoxication contributed to the tragic events.  These facts must be contributed towards his rehabilitation and parole suitability.  (In re Minnis (1972) 7 Cal.3d 639; In re Strum (1973) 11 Cal.3d 258; Rosenkrantz, supra, 29 Cal.4th p.682; In re Scott I, supra, 119 Cal.App.4th p.894; In re Ernest Smith, supra, 114 Cal.App.4th p.356; In re Wen Lee, supra, 143 Cal.App.4th p.1412; In re Weider, supra, 145 Cal.App.4th pp.589-590; In re Lawrence, supra, 150 Cal.App.4th p.1560; In re Gray, supra, 151 Cal.App.4th pgs.407, 410; In re Cooper, supra, 153 Cal.App.4th p.1066; Rosenkrantz v. Marshall, supra, 444 F.Supp.2d p.1082; and Sass v. California Board of Prison Terms (9th Cir. 2006) 461 F.3d 1123, 1132, 1134-1141, dissenting opinion regarding alcoholism and rehabilitation.)

(5)  Battered Women Syndrome does not apply.

(6)  Petitioner has no criminal history.  The fact that Petitioner lacks any history of violent crime (i.e. a total absence of a significant history of criminal violence) must weigh heavily in Petitioner's favor that he is suitable for release on parole.  (In re Scott II, supra, 133 Cal.App.4th p.602; and In re Barker, supra, 151 Cal.App.4th p.370.)

(7)  Petitioner is now 42 years old.  He has spent nearly half his life incarcerated with no violent disciplinary problems.  This lack of violence coupled with his current high level of maturity makes recidivism highly unlikely.  (Rosenkrantz v. Marshall, supra, 444 F.Supp.2d pp.1085-1086, n.18; and In re Cooper, supra, 153 Cal.App.4th p.1066.)

(8)  As recognized by the Board, Petitioner has numerous marketable skills

1  (2 vocational trades and is currently employed as a student aid in a computer

2  repair vocation), realistic parole plans and extensive community support to

3  facilitate a rapid and successful reintegration into society.  (Exhibits B and

4  H.)

5       (9)  Petitioner's institutional behavior is exemplary and his minimal

6  disciplinary record of one CDC 115 and four CDC 128A counseling chronos exhibits

7  no instants of violence or current threat to the public safety.  Petitioner has

8  earned a GED (Exhibit D); completed 2 vocational trades (Exhibit C); completed

9  various self-study classes (Exhibit E); participated in numerous programs of

10  self-help (Exhibits B); and has been repeatedly commended for laudatory behavior.

11  (Exhibit B.)  Petitioner's institutional behavior indicates the type of "enhanced

12  ability to function within the law upon release" contemplated in this section and

13  confirmed by his counselor and psychological reports.  (See Exhibits F and G.)

14  (See In re Lawrence, supra, 150 Cal.App.4th pgs.1534-1535, 1562; Willis v. Kane,

15  supra, 485 F.Supp.2d pp.1135-1137; Martin v. Marshall, supra, 431 F.Supp.2d

16  p.1047; and Rosenkrantz v. Marshall, supra, 444 F.Supp.2d pp.1086-1087, citing

17  Greenholtz, supra, 442 U.S. p.15 ["the behavior of an inmate during confinement

18  is critical in the sense that it reflects the degree to which the inmate is

19  prepared to adjust to parole release."].)

20       No evidence reliably demonstrates Petitioner to be a current and

21  unreasonable threat to public safety.  (15 CCR §2402(a); In re Ernest Smith,

22  supra, 114 Cal.App.4th pp.365-373; In re Scott I, supra, 119 Cal.App.4th pp.890-

23  892; In re Dannenberg, supra, 34 Cal.4th p.1096; In re Scott II, supra, 133

24  Cal.App.4th p.595; In re Wen Lee, supra, 143 Cal.App.4th pp.1408-1409; In re

25  Elkins, supra, 144 Cal.App.4th p.499; In re Weider, supra, 145 Cal.App.4th p.589;

26  and In re Lawrence, supra, 150 Cal.App.4th pp.1531-1545.)  The Board has abused

27  its authority and misinterpreted the law, ignoring the relevant facts of

28  Petitioner's case.  Despite the overwhelming evidence of Petitioner's

suitability, the Board continuously fails to treat his exemplary programming and psychological factors as supportive of parole. (Ramirez, supra, 94 Cal.App.4th pp.571-572; Rosenkrantz, supra 29 Cal.4th p.682; In re Scott II, supra, 133 Cal.App.4th p.595; In re Wen Lee, supra, 143 Cal.App.4th pp.1412-1414; In re Elkins, supra, 144 Cal.App.4th pp.495-502; and In re Weider, supra, 145 Cal.App.4th pp.585-591; Biggs, supra, 334 F.3d pp.916-917; Irons v. Carey, supra, 479 F.3d pp.664-665; Rosenkrantz v. Marshall, supra, 444 F.Supp.2d pp.1086-1087; Sanchez v. Kane, supra, 444 F.Supp.2d p.1062; and Willis v. Kane, supra, 485 F.Supp2d pp.1135-1137.) The Board and the lower courts ignored the positive evidence and found him unsuitable for parole based on the facts of the commitment offense, a fourteen year old non-violent disciplinary report and insufficient programming, in clear violation of his due process rights.

**F. The Board's Indifference to "Actual Evidence" that Petitioner Is Not a Current or Unreasonable Risk to Public Safety Demonstrates a Pro Forma, Sham Parole Hearing.**

Synonymous to Petitioner's September 13, 2005 hearing, "[t]he Board's readiness to make a finding so at odds with the record supports [Petitioner's] claim that his parole hearing was a sham." (In re Ramirez, supra, 94 Cal.App.4th p.571; and In re Barker, supra, 151 Cal.App.4th pp.367-368.) Nothing in the record indicates that Petitioner is an unreasonable risk to public safety. This is a glaring violation of the standard set in Biggs v. Terhune 334 F.3d at pp. 916-917 and Irons v. Carey, supra, 479 F.3d pp.661-665. To the contrary, the evidence before the Board was that Petitioner is housed at a low-security, Level II, institution, and his counselor's report makes no indication that he is a threat to the institution or the public. (Exhibit F.) In fact, all correctional experts declare Petitioner to be ready for parole. Reviewing Doctor Gamard's 2001 psychological evaluation, the Board acknowledged the evaluation to be "...largely supportive.... It says, '[t]hat he would pose a less that average risk of violence when compared to other Level II inmate population. And that his

1 | violence potential if released to the community is no higher than the average

2 | citizen.'"   (Exhibit A, p. 66:5-11, Exhibit G.)

3 |     Petitioner's psychological evaluation is supportive of parole, as is all

4 | documentation relating to Petitioner's self-help participation.  (Exhibit A, pgs.

5 | 47:2-20 and 66:5-11; Exhibits G and B.)  Yet, the Board ignored the evidence and

6 | simply came to the capricious conclusion that Petitioner was still an

7 | unreasonable threat to society  (Exhibit A, p. 103:6-12) and thus unsuitable for

8 | parole in violation of clearly established law.  (See Ramirez, supra, 94

9 | Cal.App.4th pp.571-572; In re Scott I, supra, 119 Cal.App.4th pp.896-898; In re

10 | Scott II, supra, 133 Cal.App.4th pgs.595, 600-601, 603; In re Lawrence, supra,

11 | 150 Cal.App.4th p.1556; In re Barker, supra, 151 Cal.App.4th pp.366-368; Biggs,

12 | supra, 334 F.3d p.916; Irons v. Carey, supra, 479 F.3d pp.664-665; Martin v.

13 | Marshall, supra, 431 F.Supp.2d pp.1044-1048; Rosenkrantz v. Marshall, supra, 444

14 | F.Supp.2d pp.1086-1087; and Willis v. Kane, supra, 485 F.Supp.2d pp.1135-1136.)

**G.   Reliance on Unchanging Offense Factors to Deny Parole Violates Petitioner's Due Process and Liberty Interest Rights, Resulting in a Disproportionate Term of Incarceration.**

17 |     The only permissible reason for denying parole under P.C. §3041 is that a

18 | prisoner poses a "current" and "unreasonable risk of danger to society."  No such

19 | evidence exists here.  The evidence of Petitioner's actual rehabilitation is

20 | beyond dispute.  In making such a finding, the Board must determine that there is

21 | an unusually high risk of violence to the public if the prisoner is paroled.  No

22 | such finding was made here, and no such finding could be made, in light of the

23 | evidence before the Board.  Certainly, the facts do not show a present risk of

24 | any danger, let alone an unreasonable risk.  Petitioner's significantly below

25 | average violence potential, coupled with his exceptional progress over more than

26 | 15 years of self-help, self-study, vocational and education programs is

27 | compelling evidence of his suitability.

28 |     Nothing in Petitioner's post-conviction record or the circumstances of the

1  offense supports the Board's finding of unsuitability, and the Board's repeated

2  reliance on the unchanging facts of the crime at the September 13, 2005 hearing

3  violated Petitioner's due process rights.  (Irons v. Carey, supra, 479 F.3d

4  pp.664-665; Biggs, supra, 334 F.3d pp.916-917; Martin v. Marshall, supra, 431

5  F.Supp.2d pp.1046-1048; Rosenkrantz v. Marshall, supra, 444 F.Supp.2d pp.1086-

6  1087; Sanchez v. Kane, supra, 444 F.Supp.2d p.1062; and Willis v. Kane, supra,

7  485 F.Supp.2d pgs. 1129-1130, 1135-1136; In re Scott II, supra, 133 Cal.App.4th

8  p.595; and In re Lawrence, supra, 150 Cal.App.4th pgs.1530-1540, 1554-1563.)  The

9  characteristics of Petitioner's offense clearly do not exceed the court defined

10  thresholds for "particularly egregious" crimes with elements in aggravation

11  beyond the minimum necessary to sustain a conviction for second degree murder.

12  (Dannenberg, supra, 34 Cal.4th pp.1094-1095; Rosenkrantz, supra, 29 Cal.4th

13  p.683;[20] In re Mark Smith, supra, 109 Cal.App.4th pgs.504, 506; In re Ernest

14  Smith, supra, 114 Cal.App.4th pgs.351, 367; In re Scott I, supra, 119 Cal.App.4th

15  p.890; In re Wen Lee, supra, 143 Cal.App.4th pgs.1404, 1408-1414; In re Weider,

16  supra, 145 Cal.App.4th pp.585-591; In re Gray, supra, 151 Cal.App.4th pgs.386-

17  389, 402-411; In re Barker, supra, 151 Cal.App.4th pgs.351, 353-354, 372-378; In

[20] Petitioner requests this Court take judicial notice that Robert Rosenkrantz was released on August 4, 2006 after the California Court of Appeal (July 31, 2006, No.B192676) and the State Supreme Court (August 3, 2006, No. S145504) denied appeals to Judge Wesley's L.A. County Superior Court order, In re Rosenkrantz VI (June 26, 2006, No. BH003529).  (Exhibits C, D and E to Request/Motion for Judicial Notice.)  The U.S. Central District simultaneously ordered Rosenkrantz released on August 1, 2006.  (Rosenkrantz v. Marshall, supra, 444 F.Supp.2d pgs.1087, 1088 n.20.)  Rosenkrantz served 21 years in prison for second degree murder for a crime characterized by the California Supreme Court as a "particularly egregious" murder beyond the "minimum necessary" to convict.  In fact, the State Supreme Court upheld Governor Davis' decision to revoke Rosenkrantz' parole date because his crime exhibited characteristics of first degree murder (i.e. premeditation, deliberation and laying in wait), despite the jury's acquittal of first degree murder at trial.  (In re Rosenkrantz, supra, 29 Cal.4th pgs.628-629, 670-672, 678-679.)  For the California Supreme Court to now effectuate Rosenkrantz' release by denying Petition for Review sets an upper limit on how long a prisoner convicted of a "particularly egregious" second degree murder should serve in prison before his sentence becomes grossly disproportionate.  Petitioner's crime factors pale in comparison to Rosenkrantz.  This court must now take into consideration that Petitioner has been incarcerated nearly 18 calendar years with crime factors that fall within the 15 CCR §2403(c) B-III which are far less egregious than that committed by Robert Rosenkrantz.

re Cooper, supra, 153 Cal.App.4th pp.1062-1067; Martin v. Marshall, supra, 431
F.Supp.2d pgs.1040, 1046-1048; and Irons v. Carey, supra, 479 F.3d pp.661-665.)
Petitioner's offense does not compare to the first degree murder facts of
McQuillion, supra, 306 F.3d 895, Lawrence, supra, 150 Cal.App.4th pgs.1517-1520,
1541-1563, or Elkins, supra, 144 Cal.App.4th pp.495-502. Without doubt,
Petitioner's crime falls well below the threshold defining murders with "special
circumstances." (In re Leslie Van Houten (2004) 116 Cal.App.4th 379, 352-353.)
Even where the circumstances of an offense rise "beyond the minimum necessary,"
those factors can not be relied upon indefinitely. (Irons v. Carey, supra, 479
F.3d pp.661-665.).

    At the September 13, 2005 parole hearing, Petitioner had served 15 years, 4
months on a sentence of 18 years to life and was denied parole for a second time
based on the facts of the crime. Petitioner notes for this court's consideration
that his gravity based uniform term for the victim and offense factors of his
crime is a P.C. §3041 et seq. and 15 CCR §2403(c) Matrix Category III-B term of
18-19-20 years. Furthermore, Petitioner has a liberty interest right to receive
good time credit. (P.C. §2931(a); Superintendent v. Hill, supra, 472 U.S.
pp.453-455, citing Wolff v. MacDonald, supra.) The Board has failed to
proactively apply his good time credits in a meaningful manner to reduce his term
of imprisonment. (In re Lawrence, supra, 150 Cal.App.4th p.1542 n.55.) When
Petitioner's 15 CCR §2410 post-conviction credits of 61 months are added to the
most aggravated 15 CCR §2403(c) III-B Matrix term (i.e., 20 years), Petitioner
has already served a term of 20 years, 1 month and is still in custody. With his
good time credits lawfully and meaningfully applied to his term of incarceration,
Petitioner has served a term of imprisonment beyond the bright line rule
established in Irons v. Carey, supra, 479 F.3d pp.664-665.

**H.  The Predictive Value of Petitioner's Offense Holds No Weight Of Unsuitability After Petitioner Has Served Fifteen Years In Prison Demonstrating Extensive Evidence of Actual Rehabilitation.**

Petitioner submits that since he is serving a 15 CCR §2403(c) term in excess of that uniformly established for the III-B victim and offense factors of his crime (with good time credits meaningfully applied), his term of incarceration is beyond the bright line rule established in Irons v. Carey, supra, 479 F.3d pp.664-665.   Petitioner's criminal conduct can no longer be considered as more aggravated and/or more serious than necessary to support his term of imprisonment, and therefore, his crime can no longer be considered by the Board to be "particularly egregious."  After 15 plus years of successful rehabilitation programming, the ability to predict Petitioner's future dangerousness based simply on the circumstances of the crime is nil. (Irons v. Carey, supra, 479 F.3d pp.661-665; Biggs, supra, 334 F.3d pp.916-917; Rosenkrantz v. Marshall, supra, 444 F.Supp.2d pp.1084-1085; Sanchez v. Kane, supra, 444 F.Supp.2d p.1062; Willis v. Kane, supra, 485 F.Supp.2d pgs.1129-1130, 1135-1136; In re Scott II, supra, 133 Cal.App.4th p.595; In re Wen Lee, supra, 143 Cal.App.4th pp.1411-1414; In re Elkins, supra, 144 Cal.App.4th pp.495-502; [21] In re Lawrence, supra, 150 Cal.App.4th pp.1541-1563; In re Barker, supra, 151 Cal.App.4th pp.372-377; and In re Cooper, supra, 153 Cal.App.4th pp.1062-1063.) All post-conviction evidence points clearly to Petitioner's readiness for a successful parole.

The rote repetition year after year in the face of overwhelming evidence to the contrary that an inmate is considered too dangerous

---

[21] The Elkins court, at pp.521-523, extensively analyzed Elkins' first degree murder crime factors in accordance with the second degree murder cases of In re Scott II, supra; In re Rosenkrantz, supra; Rosenkrantz v. Marshall, supra; Martin v. Marshall, supra; and Irons v. Warden (E.D. Cal. 2005) 358 F.Supp.2d 936, concluding that after 26 years of exemplary prison conduct and eleven parole hearings the crime can not be used to indicate a threat of future violence or indicate a current threat to public safety.  Petitioner's prison record is every bit as exemplary and his crime factors are far less egregious than Elkins or any of the aforementioned cases.  As such, individualized consideration, proportionality in sentencing and due process of law require that Petitioner serve a shorter term in accordance with the statutes for various degrees of murder and the Board's 15 CCR §2403(c) matrix for second degree murder.

for parole because he committed a callous crime does not satisfy the mandates of California law.   (In re Liber R. Andrade (2006) 46 Cal.Rptr.3d 317, concurring and dissenting opinion at p.330, citing In re Minnis (1972) 7 Cal.3d 639, at 647.)

Petitioner's continued incarceration clearly violates the requirement that parole shall normally be granted.   (P.C. §3041(a); In re Seabock (1983) 140 Cal.App.3d 29, 38 [P.C. 3041(a) is the primary command]; Rosenkrantz, supra, 29 Cal.4th p.683; In re Ernest Smith, supra, 114 Cal.App.4th p.351; Dannenberg, supra, 34 Cal.4th p.1080; In re Gray, supra, 151 Cal.App.4th p.403; In re Cooper, supra, 153 Cal.App.4th p.1062; McQuillion, supra, 306 F.3d p.902; Biggs, supra, 334 F.3d pp.913-914; and Greenholtz, supra, 442 U.S. pgs.7, 11-12.)

While the commitment offense may have indicated Petitioner's present dangerousness for a period of time to fulfill the "some evidence" requirement for parole denial, this is no longer true.   (Schware v. Board of Bar Examiners for the State of New Mexico (1957) 353 U.S. 323 [holding reliance on remote events that are outdated in light of changed circumstances is arbitrary and capricious.].)   The dramatic nature of the change undergone by Petitioner over the past 15 years (now 17 years) has distanced him from the crime, not just temporally, but in the sense of him no longer being the person who committed the offense and no longer being subject to the issues that led to the commission of the crime.   Petitioner has so effectively dealt with every underlying issue that led him to commit the offense that the fact of its commission no longer has any meaning in assessing his current dangerousness.   As demonstrated herein ante, Petitioner's Psychological Evaluation declares him to be a low risk to the public as a result of his extensive and genuine rehabilitative accomplishments.

Thus, the Irons v. Carey bright line rule must now be applied in Petitioner's case to stop the continued abuses of discretion by the Board.   The Board can no longer ignore the amount of time a prisoner has served when

1  determining suitability. (<u>Irons v. Carey</u>, <u>supra</u>, 479 F.3d pp.664-665;[22] <u>Willis v.</u>

2  <u>Kane</u>, <u>supra</u>, 485 F.Supp.2d pgs.1130, 1136; and <u>In re Lawrence</u>, <u>supra</u>, 150

3  Cal.App.4th pgs.1540-1542, 1552-1563.)  The Board knew and understood that

4  Petitioner had already served a 15 year, 4 month term of incarceration.  Yet, at

5  no time during the hearing did the Board refer to the 15 CCR §2403(c) second

6  degree murder matrix and determine that Petitioner's crime factors require a

7  category III-B term of 18-19-20 years, reduced by 15 CCR §2410 good time credit.

8  With his good time credits proactively applied, Petitioner had served a 20 year,

9  1 month term, in excess of his maximum matrix term and the <u>Irons v. Carey</u>, <u>supra</u>,

10  bright line rule of 18 years for his offense.  These glaring omissions by the

11  Board to even consider using its own guidelines to determine Petitioner's term of

12  incarceration and the overwhelming evidence of suitability is a violation of

13  Petitioner's due process rights and strong indication that the September 13, 2005

14  hearing was a <u>pro forma</u> sham.

15  　　　　The findings used by the Board and the state courts are devoid of evidence

16  that Petitioner is a current and unreasonable risk to public safety.  The Board

17  acted arbitrarily and capriciously in finding Petitioner unsuitable for parole.

18  (<u>Hill</u>, <u>supra</u>, 472 U.S. pgs.454-455, 457.)  Petitioner's March 2005 hearing was a

19  sham.  Petitioner is serving a constitutionally prohibited and disproportionate

20  term in clear excess of the uniformity specified in statutory and regulatory law

21  for the comparative gravity of his crime.  Continuing to deny Petitioner parole

22  based on the commitment offense (an offense clearly within the 15 CCR §2403(c)

23  Matrix at Category III-B) violates not only the legislative intent embodied in

24  P.C. §3041 et seq., it deprives him of his federally protected liberty interest

25  and 14th Amendment Constitutional right to due process of law.  (<u>Greenholtz</u>,

26  <u>supra</u>, 442 U.S. pgs.7, 11-12; <u>Biggs</u>, <u>supra</u>, 334 F.3d pp.916-917; <u>Irons v. Carey</u>,

27  _____

28  [22] The Ninth Circuit specifically examined the state's minimum necessary requirements of some evidence defined by <u>Dannenberg</u>, <u>supra</u>, 34 Cal.4th pp.1094-1095, in formulating its federal some evidence bright-line rule.  (<u>Irons v. Carey</u>, <u>supra</u>, 479 F.3d pp.661-665.)

1   _supra_, 479 F.3d pp.664-665; <u>Apprendi-Blakely-Cunningham</u>, <u>supra</u>; and also see

2   <u>Little v. Hadden</u>, <u>supra</u>, 504 F.Supp p.562 ["It is simply irrational for the

3   seriousness of the offense to be first used to determine the appropriate

4   guideline period [(i.e. Matrix)] and then to be used again as the stated reason

5   for confining a prisoner beyond that guideline," citing <u>Brach v. Nelson</u> (1972)

6   472 F. Supp 569, 574 and <u>Lupo v. Norton</u> (1974) 31 F.Supp 156, 163.].)

7                              **CONCLUSION**

8       Petitioner submits to this court that his federally protected due process

9   liberty interest right was violated on September 13, 2005. Petitioner was denied

10   parole for the second time based on immutable facts in the face of evidence of

11   actual rehabilitation (now exceeding 17 years), resulting in Petitioner's

12   sentence becoming disproportionate. There was no evidence that Petitioner's

13   crime was particularly egregious or beyond the minimum necessary to convict.

14   There was no evidence on record or in the Board's decision that demonstrates

15   Petitioner to be a current and unreasonable threat to the public. Thus, lacking

16   any current evidence of danger to the public and contrary to plentiful evidence

17   of actual rehabilitation, the Board's decision was arbitrary and capricious in

18   violation of due process protections.

19       California courts have failed to review the parole authority's decision

20   without the benefit of any meaningful consideration or an evidentiary hearing on

21   any issue(s) or fact(s). Petitioner's denial of parole violated clearly

22   established U.S. Supreme Court law. Therefore, intervention is required by this

23   U.S. District Court to ensure that Petitioner's due process rights are restored

24   under the Fifth and Fourteenth Amendments to the U.S. Constitution.

25

26   Date: _10/21/07_____    Respectfully Submitted,

27

28                             Jaime Mijangos
                            Petitioner In Pro Per